IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>FIROZ PATEL,<br><br>    Defendant. | Case No. 1:23-cr-00166-DLF |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PRETRIAL DETENTION**

  Defendant Firoz Patel, by and through undersigned counsel, respectfully submits this memorandum in opposition to the Government's request for pretrial detention.

**I. INTRODUCTION**

  The present case relates to funds that are the subject of a seizure warrant issued in January 2022. *See* ECF 11 ("Gov't Detention Memo") at 8. At the time, Mr. Patel was approximately eight months into a 36-month prison term. *Id.* at 1. More than 15 months later, after Mr. Patel was released into the custody of Immigration and Customs Enforcement ("ICE") and seemingly days from seeing his family for the first time in two years, the Government sought a new arrest warrant and arrested him on the present charges.

  Mr. Patel looks forward to vigorously defending the charges described in the Government's detention memorandum, which assumes that U.S. jurisdiction extends to all former operations of Mr. Patel's global business, omits a description of Defendant's cooperation with the Government's prior collection efforts, and exaggerates the complexity of the transactions involving the Bitcoin at issue in this case.

  The Court's task at this stage is to decide whether Mr. Patel must be detained while his trial is pending. Under the Bail Reform Act, 18 U.S.C. § 3142, Mr. Patel is presumptively entitled to

1

pretrial release; on a request for detention under § 3142(f)(2)(A), it is the Government's burden to show that no conditions will "reasonably assure" Mr. Patel's appearance. 18 U.SC. § 3142(b); *see id.* § 3142(c) (concerning conditional release to ensure the defendant's appearance). The Government does not argue that Mr. Patel poses a danger to the community.

The Government cannot demonstrate that Mr. Patel is a serious flight risk. Rather, he has an established track record proving that he is not a flight risk: In two prior criminal proceedings, he voluntarily traveled from his home in Canada to the United States to engage with U.S. law enforcement in both cases. *See United States v. Patel*, No. 3:10-cr-00211-3 (M.D. Tenn.), ECF 26 (Government filing noting Mr. Patel's voluntary travel from Canada to the United States in relation to the proceeding); *United States v. Patel*, 1:18-cr-00053 (D.D.C.) (hereinafter, "*Patel I*"), ECF 37 (same). In one of those cases, involving some of the same allegations underlying the present case, then-District Judge Ketanji Brown Jackson ordered Mr. Patel's release on bond, notwithstanding either the severity of the alleged offense or his lack of ties to this jurisdiction. *Patel I*, ECF 49. Mr. Patel paid the bond, attended all proceedings, and ultimately traveled from Canada to self-surrender for his prison term, which he has now completed.

The present case is closely similar to the prior matter, except that the Government now alleges money laundering in a *significantly lower amount*. In other words, to the extent the Government attempts to emphasize the severity of its allegations against Mr. Patel, now-Justice Jackson considered an alleged money laundering conspiracy of *far greater scope* and ordered Mr. Patel's pretrial release. The present matter stems from the same facts alleged in that matter; if anything, Mr. Patel's conduct in the prior proceedings provides greater support for the conclusion that he is not a flight risk now.

For these reasons, Defendant requests that the Court grant his release pending trial.

## II. STATEMENT OF RELEVANT PROCEEDINGS

On July 16, 2020, Defendant Firoz Patel, a Canadian national, pleaded guilty to one charge of conspiracy under 18 U.S.C. § 371. *See Patel I*, ECF 136. In that matter, the Government had alleged that Mr. Patel participated in the laundering of more than $250 million through his operation of various money transmission companies. *See, e.g., id.*, 1 at 8. During the proceedings, Mr. Patel was granted pretrial release subject to an appearance bond of $300,000. *Id.*, ECF 49. Mr. Patel was ultimately sentenced to a prison term of 36 months, *id.*, ECF 136; he has now completed his sentence, having self-surrendered to prison from his home in Canada.

After Mr. Patel completed his term and was released into ICE custody, where he remained for approximately 10 days, he was again arrested on separate charges of money laundering related to conduct that occurred before his prison term. *See generally United States v. Patel*, No. 1:23-mj-08093 (D. Mass.). On April 27, 2023, the U.S. District Court for the District of Massachusetts transferred Mr. Patel's case to this Court, and, on May 17, Magistrate Judge Moxila A. Upadhyaya scheduled Mr. Patel's detention hearing for May 22, 2023.

## III. ARGUMENT

### A. Legal Standard

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). This case represents "the norm."

The exception is kept appropriately narrow by the Bail Reform Act, which provides that a court ordinarily must release an individual and establishes a strong presumption in favor of release:

> [T]he judicial officer *shall order the pretrial release of the person* on personal recognizance, or upon execution of an unsecured appearance bond in an amount specified by the court . . . unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.

3

18 U.S.C. § 3142(b) (emphasis added). In passing the Bail Reform Act, Congress intended that only a small but identifiable group of offenders be detained pending trial:

> The change in the law was said to reflect "the deep public concern . . . about the growing problem of crimes committed by persons on release" and the recognition that "there is a small but identifiable group of particularly dangerous defendants as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons. It is with respect to this limited group of offenders that the courts must be given the power to deny release pending trial."

*United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985) (quoting S. Rep. No. 225, 98th Cong., 1 Sess. 6-7, *reprinted in* 1984 Code Cong. & Ad. News 3182, 3188-89 (Senate Report)); *see also United States v. Hassanshahi*, 989 F. Supp. 2d 110, 113 (D.D.C. 2013) (reiterating the principles set forth in *United States v. Salerno*). As the U.S. Court of Appeals for the D.C. Circuit summed up, "[d]etention until trial is relatively difficult to impose." *United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999).

Finally, the Act allows detention based upon flight only where the Court finds that "no condition or combination of conditions will reasonably assure the appearance of" the defendant for further proceedings. 18 U.S.C. § 3142(e). To make this determination, § 3142(g) identifies a set of factors for the Court to consider, including: (1) "the nature and circumstances of the offense charged," (2) "the weight of the evidence" against the defendant, (3) "the history and characteristics" of the defendant, and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *Id.* § 3142(g).

Importantly, though, the Court's ultimate decision must trace back to either dangerousness (which the Government does not now assert) or risk of flight: "Detention cannot be based on a finding that the defendant is unlikely to comply with conditions of release absent the requisite

4

finding of dangerousness or risk of flight; otherwise the scope of detention would extend beyond the limits set by Congress." *United States v. Munchel*, 991 F.3d 1273, 1283 (D.C. Cir. 2021).

**B.      Pretrial Release Is Appropriate in This Case**

Under the Bail Reform Act and the caselaw discussed above, pretrial release is appropriate in the present case. Defendant is a 48-year-old individual with no history of violence, no history of alcohol or substance abuse, and no criminal history beyond the 2018 case that gives rise to the present proceedings and another matter for which Mr. Patel served (and completed) a concurrent sentence. *See United States v. Patel*, No. 1:20-cr-00113 (D.D.C.). In other words, Defendant is not one of the "small but identifiable group of particularly dangerous defendants" as to whom no conditions can reasonably assure the safety of the community, and he has demonstrated that he is not a risk of flight.

**1.      There Is No Evidence That Defendant Is a Flight Risk**

The Government bears the burden of showing, by a preponderance of the evidence, that Defendant is a flight risk and that "no condition or combination of conditions will reasonably assure the appearance of" Defendant for further proceedings.  18 U.S.C. § 3142(e); *United States v. Hong Vo*, 978 F. Supp. 2d 41, 42 (D.D.C. 2013) (citing *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996). The Government cannot carry that burden in this case.

While Defendant resides in Canada with his wife and their daughter, he has regularly traveled to the United States, even knowing of the federal investigation which culminated in his initial indictment, and he has voluntarily traveled to the United States in relation to prior criminal proceedings—including to self-surrender for a prior prison term.

**a.      Defendant Has Demonstrated That He Is Not a Flight Risk When Facing Significant Charges**

Recent experience confirms that Mr. Patel is not a flight risk. In two prior criminal proceedings, Mr. Patel has voluntarily traveled from his home in Montreal to the United States in order either to meet with federal law enforcement or to attend arraignment. *See United States v. Patel*, No. 3:10-cr-00211-3 (M.D. Tenn.), ECF 26; *Patel I*, ECF 37.

In 2012, Mr. Patel was indicted in the Middle District of Tennessee on charges of conspiracy to commit money laundering and misuse of criminal proceeds. *United States v. Patel*, No. 3:10-cr-00211-3 (M.D. Tenn.), ECF 15. In a motion, the Government asked the court to withdraw the warrant for Mr. Patel's arrest, as he had "voluntarily agreed to travel to [the United States] for a meeting with the [prosecutor] and the case agent." *Id.*, ECF 26 at 1. Shortly after granting that motion, the court ordered Mr. Patel's pretrial release on a bond of $35,000, even accounting for Mr. Patel's Canadian citizenship. *Id.*, ECF 33.

In March 2018, a Grand Jury returned an indictment charging Mr. Patel and his brother, Ferhan Patel[1]—along with their company—with conspiracy to launder monetary instruments and unlicensed money transmission, among other charges. *See Patel I*, ECF 1. In that indictment, the defendants were charged with illegally transmitting more than $250 million—far more than the $25 million at issue in this case. *Id.* at 8. In fact, during one hearing, then-prosecutor Zia Faruqui—now a magistrate judge on this Court—went further, asserting that the value of the transactions, by some estimates, "would eclipse the *$1 billion mark*." *Id.*, ECF 14 at 3 (emphasis added). Accordingly, the Government viewed the 2018 case as involving at least ten times more money—and potentially more than *40 times more money*—than the present case.

Despite the magnitude of the charges against him, Defendant made himself available to federal prosecutors, as he had done previously. In a January 2019 motion before this Court, the

---

[1] This filing will refer to Firoz Patel as "Defendant" or "Mr. Patel" and will refer to Ferhan Patel by his full name.

6

Government sought to quash the warrant for Mr. Patel's arrest, explaining that he had already booked air travel to come to the United States from his home in Canada to be arraigned. *Id.*, ECF 37; *see also id.*, ECF 38 (order granting the motion). Later the same month, then-Judge Ketanji Brown Jackson ordered that Mr. Patel be released on personal recognizance, noting in the same order and a subsequent ruling that Mr. Patel was allowed to travel between Canada and the United States for hearings in the matter, which he did numerous times. *Id.*, ECF 49, 54. In a combined memorandum concerning both that case and the matter arising in the Middle District of Tennessee—which was later transferred to this Court—the Government wrote that the U.S. Sentencing Guidelines provided for a prison term of 292 to 365 months in Mr. Patel's case.[2] *United States v. Patel*, No. 1:20-cr-00113 (D.D.C.), ECF 10 at 10. In the present matter, the Government alleges that the applicable sentencing range would be 135 to 168 months. Gov't Detention Memo at 18, n.6. In other words, with Mr. Patel facing a *dramatically longer* prison term than he is at present, now-Justice Jackson concluded that Mr. Patel was *not* a flight risk. There is simply no indication that the present circumstances justify a different finding.

      **b.**    **Then-Judge Jackson Reversed a Magistrate Judge's Order Detaining Defendant's Similarly Situated Brother**

Other aspects of the 2018 case lend more explicit support for Mr. Patel's pretrial release here. In that case, Mr. Patel's brother, Ferhan Patel, was indicted on identical charges. Firoz and Ferhan Patel maintain strong ties and exhibit similar characteristics in various ways: They both live with their families in Montreal, and they have long been business partners. In that case, the Government sought Ferhan Patel's pretrial detention based "entirely [on] risk of flight."[3] *Patel I*,

---

[2] Pursuant to Mr. Patel's plea agreement, signed several months after Mr. Patel was released on personal recognizance, the Government sought a prison term of 52 months. *United States v. Patel*, No. 1:20-cr-00113 (D.D.C.), ECF 10 at 1.

[3] At the time, only Ferhan Patel had been detained in the matter. Accordingly, the January 2018 detention hearing pertained only to Ferhan Patel but addressed matters involving Firoz Patel.

7

ECF 14 at 3. As noted, the Government described the defendants' case as "a large-scale . . . money laundering enterprise" and "one of the largest ones charged in this district." *Id.* The Government further argued that detention was appropriate because Ferhan Patel had "zero ties to the United States," as he had neither worked nor lived in the country, and because of the weight of the evidence against the defendants. *Id.* at 9. Finally, the Government explicitly indicated that it viewed those arguments as equally applicable to Firoz Patel. *Id.* at 6 (describing the brothers' conduct in tandem and referring to their "pattern and practice").

In an order initially requiring Ferhan Patel's pretrial detention, the magistrate judge observed that the defendants were charged with offenses "carry[ing] significant minimum terms of incarceration," the weight of the evidence was "particularly compelling," and Ferhan Patel's lack of ties to the District of Columbia were "particularly troublesome." *Id.*, ECF 17. Accordingly, the magistrate ordered Ferhan Patel's detention. *Id.*

However, on review, Justice Jackson reversed the magistrate's ruling and granted Ferhan Patel's pretrial release. *Id.*, ECF 19. In doing so, Justice Jackson concluded that Ferhan Patel was neither a flight risk nor a danger to the community, releasing him on personal recognizance in the custody of a family member.[4] *Id.* When Firoz Patel was eventually arraigned in January 2019, Judge Jackson ordered him released on personal recognizance with an appearance bond of $300,000. *Id.*, ECF 49. Ultimately, Justice Jackson's conclusion that neither Firoz Patel nor his brother were flight risks was accurate: At the conclusion of their proceedings, both Firoz and

---

[4] Mr. Patel believes that release on personal recognizance, subject to an appearance bond, is appropriate in this matter. Still, to the extent the Court believes that conditions are required to ensure that Mr. Patel appears in the present case, Defendant requests that the Court impose the same conditions as initially imposed in Ferhan Patel's case—*i.e.*, releasing him to Mr. Nisar Ahmed, a lifelong family friend that Mr. Patel considers a member of his own family. Mr. Ahmed lives in a single-family home on Long Island with his wife and children; he and his wife have no criminal records, he maintains full-time employment, and he is willing to serve as a third-party custodian should this Court require his services.

Ferhan Patel self-surrendered by traveling from their homes in Canada to FCI Danbury in Connecticut. Indeed, the Government's detention memorandum refers to an "extension based on difficulties when [they] attempted to enter the country from Canada," Gov't Detention Memo at 4; in fact, Mr. Patel and his brother first attempted to self-surrender in May 2021, were denied entry to the United States, and then coordinated with the Government to ensure they were able to enter the country to self-surrender the following month.

This Court has no reason to reach a different conclusion from the one reached by Justice Jackson. If anything, the present circumstances lend greater support for Mr. Patel's pretrial release in this matter. He has already demonstrated his commitment to attending court proceedings, traveling from his home in Canada as necessary. And, as noted, the present case involves a substantially lower potential penalty than the prior case.

### c.   The § 3142(g) Factors Do Not Otherwise Support Detention

The Government relies heavily on the § 3142(g) factors without confronting the unusually voluminous evidence showing that Mr. Patel is *not* a flight risk. In light of that evidence, the § 3142(g) factors do not require the Court to order Mr. Patel's detention at this stage.

First, Mr. Patel's personal characteristics have not changed in any meaningful way since Justice Jackson order his pretrial release in 2019. His wife and 18-year-old daughter continue to reside in the Montreal area, where they are supported by their extended family—belying the Government's speculation that Mr. Patel can access material amounts of "unsecured cryptocurrency assets," *see* Gov't Detention Memo at 16. Due to his wife's health and COVID-related travel restrictions, Mr. Patel has not seen his family since his date of self-surrender.

Next, as discussed above, the nature and circumstances of the alleged offense do not support pretrial detention to any greater extent than in Mr. Patel's prior case. To reiterate, the Government suggested to Mr. Patel and to this Court that his offenses involved money laundering

9

exceeding *$1 billion*, and he was ultimately indicted for money laundering in excess of $250 million. Nevertheless, Justice Jackson denied pretrial detention, and Mr. Patel attended all required meetings and hearings.

The Government now argues that Mr. Patel's alleged conduct displays a capacity for "deceptiveness" that itself justifies pretrial detention. Gov't Detention Memo at 14 (citing *United States v. Otunyo*, No. 1:18-cr-00251, 2020 WL 2065041 (D.D.C. April 28, 2020); *United States v. Bikundi*, 47 F. Supp. 3d 131, 134-35 (D.D.C. 2014)). The cases on which the Government relies for this point are distinguishable. In *Otunyo*, the defendant made and used false identification documents that could have enabled him to evade law enforcement for some period of time; the Government has never alleged that Mr. Patel has fabricated identification documents, and he has never sought to evade law enforcement despite facing a significant prison term. And although the court ordered pretrial detention because of the sophistication of the fraud alleged in *Bikundi*, the present case does not require the same type of speculation as that court faced, because Mr. Patel has already demonstrated his commitment to appearing in the United States as required.

Finally, the weight of the evidence is not so great as to require Mr. Patel's pretrial detention. Mr. Patel's prior guilty plea related to the unlicensed transmission of funds without a license. The Government's filings to date have not shown that the same offense encompasses the funds at issue. Rather, the Government's Arrest Warrant Affidavit relies heavily on inference and does not address the limits of U.S. jurisdiction in relation to Mr. Patel's former business, even while exaggerating the inherent complexity of cryptocurrency transactions. In short, the Government cannot demonstrate that the evidence against Mr. Patel is so strong as to render him a flight risk: Even after pleading guilty in the prior matter and being sentenced to years in prison, Mr. Patel appeared in the United States on demand.

### 2. Defendant Is Not a Danger to the Community

We are not aware of any evidence suggesting that Defendant poses a danger to any person, nor does the Government argue that he should be detained as a risk to the community. *See* Gov't Detention Memo at 1 (seeking detention pursuant to 18 U.S.C. § 3142(f)(2)(A), which refers to "serious risk of flight"). Defendant has no history of violent crime or of alcohol or substance abuse, and he is charged with financial crimes without allegations of any form of accompanying violence.

## III. CONCLUSION

For the aforementioned reasons, Defendant respectfully requests pretrial release. Given Defendant's proven habit of appearing in court, even from his home in Canada, personal recognizance is appropriate in this case.

Dated: May 19, 2023

Respectfully submitted,

/s/ A. Jeff Ifrah
A. Jeff Ifrah
Jacob Grubman (*pro hac vice* pending)
IFRAH PLLC
1717 Pennsylvania Ave. NW
Suite 650
Washington, D.C. 20006
Tel.: (202) 524-4140
Fax: (202) 524-4141
jeff@ifrahlaw.com
jgrubman@ifrahlaw.com

*Attorneys for Defendant Firoz Patel*

## CERTIFICATE OF SERVICE

I hereby certify that, on May 19, 2023, I will electronically transmit the foregoing document to the Clerk of the Court using the CM/ECF system for filing, which will send a notification of such filing to all counsel of record.

Dated: May 19, 2023                                  Respectfully submitted,

*/s/ A. Jeff Ifrah*
A. Jeff Ifrah