IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>FIROZ PATEL,<br><br>    Defendant. | Case No. 1:23-cr-00166-DLF |

**DEFENDANT'S RESPONSE IN OPPOSITION TO
MOTION FOR PRETRIAL DETENTION**

Defendant Firoz Patel, by and through undersigned counsel, respectfully submits this response in opposition to the Government's pending motion, which seeks to overturn the Magistrate Judge's order conditionally releasing Defendant pending trial. ECF 18 ("Mot. for Pretrial Detention").

I.   **INTRODUCTION**

On May 22, 2023, Magistrate Judge Robin M. Meriweather issued an order conditionally releasing Defendant while the present matter is pending. *See* 5/23/23 Min. Order. Magistrate Judge Meriweather's decision was well-supported by the characteristics of this defendant and the facts of the case.

The Bail Reform Act *requires* Mr. Patel's release absent a finding that no conditions will "reasonably assure" his appearance in Court as required. *See* 18 U.S.C. § 3142(b). In this case, the Government cannot carry its burden of proving, to the contrary, that Mr. Patel is a serious risk of flight under § 3142(f)(2)(A) and that even Court-ordered conditions would be insufficient to assure Mr. Patel's appearance in Court.

1

Mr. Patel has an established track record proving that he is distinctly *not* a flight risk. In two prior criminal proceedings, Mr. Patel has voluntarily traveled from his home in Canada to the United States to engage with U.S. law enforcement and courts. *See United States v. Patel*, No. 3:10-cr-00211-3 (M.D. Tenn.), ECF 26 (Government filing noting Mr. Patel's voluntary travel from Canada to the United States in relation to the proceeding); *United States v. Patel*, 1:18-cr-00053 (D.D.C.) (hereinafter, "*MH Pillars*"), ECF 37 (same). In one of these cases, involving some of the same allegations underlying the present case, now-Justice Ketanji Brown Jackson ordered Mr. Patel's release on bond, notwithstanding the lengthier prison term he faced in that matter and his lack of ties to this jurisdiction. *MH Pillars*, ECF 49. Mr. Patel paid the bond, attended all proceedings, and ultimately traveled from Canada to self-surrender for his prison term, which he has now completed.

The present case is closely similar to the prior matter before this Court, with two critical differences. In *MH Pillars*, Mr. Patel pleaded guilty to conspiracy in relation to unlicensed money transmission (which gave rise to charges of money laundering). *MH Pillars*, ECF 90. In this matter, the Government similarly alleges money laundering on the basis of unlicensed money transmission. ECF 5 (Indictment). But while the prior matter involved the alleged transmission of more than $250 million—and by at least one Government account, more than *$1 billion*—the present case centers around far less money: a transfer of 450 Bitcoin ("BTC") (then valued at approximately $24 million, now approximately $12.2 million). In addition, the Government has not alleged facts meeting the elements of an offense under the statutes cited in the Indictment, 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1957(a). For all of its innuendo about the nature of Mr. Patel's money transmission business, the Government has not presented evidence connecting these funds with any improper conduct. Having traced hundreds of Bitcoin among several accounts, the

2

Government has alleged that a total of 0.66 BTC ever touched a customer allegedly involved in troubling activity—for a total value of $287. *See supra* at 9.

Accordingly, bolstering Mr. Patel's consistent compliance with judicial appearance requirements, the weight of the evidence in this matter favors Mr. Patel's release. Finally, the nature of the alleged offense does not mandate Mr. Patel's pretrial detention, and the Government does not allege that he is a danger to the community.

For these reasons, Mr. Patel opposes the Government's request for pretrial detention.

## II.   STATEMENT OF RELEVANT PROCEEDINGS

On July 16, 2020, Defendant Firoz Patel, a Canadian national, pleaded guilty to one charge of conspiracy under 18 U.S.C. § 371. *See MH Pillars*, ECF 136. In that matter, the Government had alleged that Mr. Patel participated in the laundering of more than $250 million through his operation of various money transmission companies. *See, e.g.*, *id.*, 1 at 8. During the proceedings, Mr. Patel was granted pretrial release subject to an appearance bond of $300,000. *Id.*, ECF 49. Mr. Patel was ultimately sentenced to a prison term of 36 months, *id.*, ECF 136; he has now completed his sentence, having self-surrendered to prison from his home in Canada.

After Mr. Patel completed his term and was released into Immigration and Customs Enforcement ("ICE") custody, where he remained for approximately 10 days, he was again arrested on separate charges of money laundering related to conduct that occurred before his prison term. On April 27, 2023, the U.S. District Court for the District of Massachusetts transferred Mr. Patel's case to this Court.

On May 22, 2023, following briefing and oral argument, Magistrate Judge Meriweather ordered Mr. Patel's conditional release pending trial. *See* 5/23/23 Min. Order. Magistrate Judge Meriweather assessed the parties' arguments under the Bail Reform Act and the § 3142(g) factors and identified conditions that would reasonably assure Mr. Patel's appearance as required,

including that Mr. Patel be supervised by Pretrial Services for the District of Columbia, that he refrain from traveling outside Canada and the United States, and that he refrain from engaging in financial transactions outside the normal course of household expenses. ECF 19.

After a brief stay of the Court's conditional release order, the Government filed the present motion seeking the Court's reconsideration of Magistrate Judge Meriweather's order. *See generally* Mot. for Pretrial Detention.

### III. ARGUMENT

#### A. Legal Standard

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). This case represents "the norm."

The exception is kept appropriately narrow by the Bail Reform Act, which provides that a court ordinarily must release an individual and establishes a strong presumption in favor of release:

> [T]he judicial officer *shall order the pretrial release of the person* on personal recognizance, or upon execution of an unsecured appearance bond in an amount specified by the court . . . unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.

18 U.S.C. § 3142(b) (emphasis added). In passing the Bail Reform Act, Congress intended that only a small but identifiable group of offenders be detained pending trial:

> The change in the law was said to reflect "the deep public concern . . . about the growing problem of crimes committed by persons on release" and the recognition that "there is a small but identifiable group of particularly dangerous defendants as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons. It is with respect to this limited group of offenders that the courts must be given the power to deny release pending trial."

*United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985) (quoting S. Rep. No. 225, 98th Cong., 1 Sess. 6-7, *reprinted in* 1984 Code Cong. & Ad. News 3182, 3188-89 (Senate Report)); *see also United*

*States v. Hassanshahi*, 989 F. Supp. 2d 110, 113 (D.D.C. 2013) (reiterating the principles set forth in *United States v. Salerno*). As the U.S. Court of Appeals for the D.C. Circuit summed up, "[d]etention until trial is relatively difficult to impose." *United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999).

Finally, the Act allows detention based upon flight only where the Court finds that "no condition or combination of conditions will reasonably assure the appearance of" the defendant for further proceedings. 18 U.S.C. § 3142(e). To make this determination, § 3142(g) identifies a set of factors for the Court to consider, including: (1) "the nature and circumstances of the offense charged," (2) "the weight of the evidence" against the defendant, (3) "the history and characteristics" of the defendant, and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *Id.* § 3142(g).

Importantly, though, the Court's ultimate decision must trace back to either dangerousness (which the Government does not now assert) or risk of flight: "Detention cannot be based on a finding that the defendant is unlikely to comply with conditions of release absent the requisite finding of dangerousness or risk of flight; otherwise the scope of detention would extend beyond the limits set by Congress." *United States v. Munchel*, 991 F.3d 1273, 1283 (D.C. Cir. 2021).

### B.      Pretrial Release Is Appropriate in This Case

The Government bears the burden of showing, by a preponderance of the evidence, that Defendant is a flight risk and that "no condition or combination of conditions will reasonably assure the appearance of" Defendant for further proceedings. 18 U.S.C. § 3142(e); *United States v. Hong Vo*, 978 F. Supp. 2d 41, 42 (D.D.C. 2013) (citing *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996). The Government cannot carry that burden in this case.

Mr. Patel's personal history and characteristics distinctly favor his release pending trial, as he has proven his commitment to appearing in U.S. court proceedings as required. In addition, the

5

Government's allegations against pleadings exhibit critical gaps such that the weight of the evidence similarly favors Mr. Patel's release. Furthermore, the Government overstates the nature and seriousness of the charged offense, and Mr. Patel plainly does not pose a danger to any person or the community.

### 1. Mr. Patel's Personal History and Characteristics Favor His Pretrial Release

Mr. Patel's personal characteristics have not changed in any meaningful way since Justice Jackson ordered his pretrial release in 2019. His wife and 18-year-old daughter continue to reside in the Montreal area, where they are supported by their extended family—belying the Government's speculation that Mr. Patel can access material amounts of "unsecured cryptocurrency assets," *see* Mot. for Pretrial Detention at 18. Due to his wife's health and COVID-related travel restrictions, Mr. Patel has not seen his family since his date of self-surrender.

Recent experience confirms that Mr. Patel is not a flight risk. In two prior criminal proceedings, Mr. Patel has voluntarily traveled from his home in Montreal to the United States in order either to meet with federal law enforcement or to attend arraignment. *See United States v. Patel*, No. 3:10-cr-00211-3 (M.D. Tenn.), ECF 26; *MH Pillars*, ECF 37.

In 2012, Mr. Patel was indicted in the Middle District of Tennessee on charges of conspiracy to commit money laundering and misuse of criminal proceeds. *United States v. Patel*, No. 3:10-cr-00211-3 (M.D. Tenn.), ECF 15. In a motion, the Government asked the court to withdraw the warrant for Mr. Patel's arrest, as he had "voluntarily agreed to travel to [the United States] for a meeting with the [prosecutor] and the case agent." *Id.*, ECF 26 at 1. Shortly after granting that motion, the court ordered Mr. Patel's pretrial release on a bond of $35,000, even accounting for Mr. Patel's Canadian citizenship. *Id.*, ECF 33.

In March 2018, a Grand Jury returned an indictment charging Mr. Patel and his brother, Ferhan Patel[1]—along with their company—with conspiracy to launder monetary instruments and unlicensed money transmission, among other charges. *See MH Pillars*, ECF 1. In that indictment, the defendants were charged with illegally transmitting more than $250 million—far more than the $25 million at issue in this case. *Id.* at 8. In fact, during one hearing, then-prosecutor Zia Faruqui—now a magistrate judge on this Court—went further, asserting that the value of the transactions, by some estimates, "would eclipse the *$1 billion mark*." *Id.*, ECF 14 at 3 (emphasis added). Accordingly, the Government viewed the 2018 case as involving at least ten times more money—and potentially more than *40 times more money*—than the present case.

Despite the magnitude of the charges against him, Defendant made himself available to federal prosecutors, as he had done previously. In a January 2019 motion before this Court, the Government sought to quash the warrant for Mr. Patel's arrest, explaining that he had already booked air travel to come to the United States from his home in Canada to be arraigned. *Id.*, ECF 37; *see also id.*, ECF 38 (order granting the motion). Later the same month, then-Judge Ketanji Brown Jackson ordered that Mr. Patel be released on personal recognizance, noting in the same order and a subsequent ruling that Mr. Patel was allowed to travel between Canada and the United States for hearings in the matter, which he did numerous times. *Id.*, ECF 49, 54. In a combined memorandum concerning both that case and the matter arising in the Middle District of Tennessee—which was later transferred to this Court—the Government wrote that the U.S. Sentencing Guidelines provided for a prison term of 292 to 365 months in Mr. Patel's case.[2] *MH*

---

[1] This filing will refer to Firoz Patel as "Defendant" or "Mr. Patel" and will refer to Ferhan Patel by his full name.

[2] Pursuant to Mr. Patel's plea agreement, signed several months after Mr. Patel was released on personal recognizance, the Government sought a prison term of 52 months. *United States v. Patel*, No. 1:20-cr-00113 (D.D.C.), ECF 10 at 1.

7

*Pillars*, ECF 107 at 11. In the present matter, the Government alleges that the applicable sentencing range would be 135 to 168 months. Mot. for Pretrial Detention at 20, n.7. In other words, with Mr. Patel facing a *dramatically longer* prison term than he is at present, now-Justice Jackson concluded that Mr. Patel was *not* a flight risk.

There is simply no indication that the present circumstances justify a different finding.

### 2. The Weight of the Evidence Does Not Favor Pretrial Detention

Mr. Patel faces two charges in this matter pursuant to 18 U.S.C. § 1956(a)(1)(B)(i) (for money laundering) and § 1957(a) (for engaging in a monetary transaction involving more than $10,000 in criminally derived property). Because the Government has not alleged facts sufficient to support a conviction under either statute, the weight of the evidence favors Mr. Patel's release pending trial.

This Court has explained that the four requirements of 18 U.S.C. § 1956(a)(1)(B)(i) are that the defendant:

> (1) knowingly conducted a "financial transaction," (2) which he knew involved funds that were the proceeds of some form of unlawful activity, (3) where the funds involved in the financial transaction in fact were the proceeds of a "specified unlawful activity," and (4) that the defendant engaged in the financial transaction knowing that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of such unlawful activity.

*United States v. All Assets Held at Bank Julius Baer & Company, Ltd.*, 571 F. Supp. 2d 1 (D.D.C. 2008) (quoting *United States v. Tarkoff*, 242 F.3d 991, 994 (11th Cir. 2001)). Similarly, an offense under 18 U.S.C. § 1957(a) requires a finding that a transaction "is derived from specified unlawful activity"—here, unlicensed money transmission or wire fraud, according to the Indictment. ECF 5 at 1-2. In this case, even accepting as true the Government's account of the Bitcoin transfer at issue, the Government has not offered any evidence that "the funds involved in the financial

transaction in fact were the proceeds of" either unlicensed money transmission or wire fraud, among other deficiencies in the Government's allegations.

Indeed, while the Government has traced various funds from other wallets into the Blockchain.com account now at issue, *see* Mot. for Pretrial Detention at 12-15, the Government has never alleged that *all* of Mr. Patel's company's money transmission violated U.S. licensing laws, as the company operated in 190 countries around the world. Here, there is tellingly little evidence that the funds at issue were involved in any improper money transmission.

There is a similar lack of evidence that these funds involved any other type of misconduct. Specifically, the Government describes transactions involving one wallet at least two steps removed from the 450-BTC transfer at issue in this case,[3] alleging that the wallet received 1,836 deposits totaling approximately 803.66 BTC from January 2016 to November 2017. Mot. for Pretrial Detention at 13-14. The Government then alleges that this account received "multiple deposits that originated from known dark web criminal enterprises." *Id.* at 14. But of the 803.66 BTC alleged to have been deposited into this account, only 0.66 BTC are alleged to have come from any such enterprises. *Id.* And at the time those deposits were made, in March and April 2016, the 0.66 BTC was worth approximately $287. These figures do not demand harsh treatment for this defendant, nor do they suggest any incentive for Mr. Patel to flee.

The Government seems to assert that Mr. Patel is more likely to flee because of the strength of its case against him. Ultimately, though, the "weight" of the Government's evidence relies on little more than rhetorical questions. *See* Mot. for Pretrial Detention at 22. In this respect, the

---

[3] Specifically, the Government alleges that an account labeled "Consolidation Wallet 6" was the source of some funds in the account labeled "Exchanger 1," which was one source of funds for the account from which the 450 BTC were derived. Mot. for Pretrial Detention at 13.

Government has failed to carry its burden of proof, and the weight of the evidence favors pretrial release.

### 3. The Government Overstates the Nature and Seriousness of the Alleged Offense

Next, as discussed above, the nature and circumstances of the alleged offense do not support pretrial detention to any greater extent than in Mr. Patel's prior case.

In that case, Mr. Patel's brother, Ferhan Patel, was indicted on identical charges, and the Government sought his pretrial detention based "entirely [on] risk of flight."[4] *MH Pillars*, ECF 14 at 3. As noted, the Government described the defendants' case as "a large-scale . . . money laundering enterprise" and "one of the largest ones charged in this district," suggesting to the Court that although the indictment referred to amounts exceeding $250 million, the true scope of the offense was greater than *$1 billion*. *Id.* The Government further argued that detention was appropriate because Ferhan Patel had "zero ties to the United States," as he had neither worked nor lived in the country, and because of the weight of the evidence against the defendants. *Id.* at 9. Finally, the Government explicitly indicated that it viewed those arguments as equally applicable to Firoz Patel. *Id.* at 6 (describing the brothers' conduct in tandem and referring to their "pattern and practice").

Notwithstanding these arguments, Justice Jackson granted Ferhan Patel's pretrial release. *Id.*, ECF 19. In doing so, Justice Jackson concluded that Ferhan Patel was neither a flight risk nor a danger to the community, releasing him on personal recognizance in the custody of a family member.[5] *Id.* When Firoz Patel was eventually arraigned in January 2019, Judge Jackson ordered

---

[4] At the time, only Ferhan Patel had been detained in the matter. Accordingly, the January 2018 detention hearing pertained only to Ferhan Patel but addressed matters involving Firoz Patel.

[5] Mr. Patel believes that release on personal recognizance, subject to an appearance bond, is appropriate in this matter. Magistrate Judge Meriweather agreed with this assessment and ordered Mr. Patel's release on his own personal recognizance, subject to certain conditions. ECF 19. Still,

him released on personal recognizance with an appearance bond of $300,000. *Id.*, ECF 49. Ultimately, Justice Jackson's conclusion that neither Firoz Patel nor his brother were flight risks was accurate: At the conclusion of their proceedings, both Firoz and Ferhan Patel self-surrendered by traveling from their homes in Canada to FCI Danbury in Connecticut. Indeed, the Government's motion refers to an "extension based on difficulties when [they] attempted to enter the country from Canada," Mot. for Pretrial Detention at 5; in fact, Mr. Patel and his brother first attempted to self-surrender in May 2021, were denied entry to the United States, and then coordinated with the Government to ensure they were able to enter the country to self-surrender the following month.

This Court has no reason to reach a different conclusion from the one reached by Justice Jackson. If anything, the present circumstances lend greater support for Mr. Patel's pretrial release in this matter. He has already demonstrated his commitment to attending court proceedings, traveling from his home in Canada as necessary, and the charges arising in this case involve a significantly shorter potential term of incarceration.

The Government now argues that Mr. Patel's alleged conduct displays a capacity for "deceptiveness" that itself justifies pretrial detention. Mot. for Pretrial Detention at 18 (citing *United States v. Otunyo*, No. 1:18-cr-00251, 2020 WL 2065041 (D.D.C. April 28, 2020); *United States v. Bikundi*, 47 F. Supp. 3d 131, 134-35 (D.D.C. 2014)). The cases on which the Government relies for this point are distinguishable. In *Otunyo*, the defendant made and used false identification documents that could have enabled him to evade law enforcement for some period of time; the

---

to the extent the Court believes that conditions are required to ensure that Mr. Patel appears in the present case, Defendant requests that the Court impose the same conditions as initially imposed in Ferhan Patel's case—*i.e.*, releasing him to Mr. Nisar Ahmed, a lifelong family friend that Mr. Patel considers a member of his own family. Mr. Ahmed lives in a single-family home on Long Island with his wife and children; he and his wife have no criminal records, he maintains full-time employment, and he is willing to serve as a third-party custodian should this Court require his services.

11

Government has never alleged that Mr. Patel has fabricated identification documents, and he has never sought to evade law enforcement despite facing a significant prison term. And although the court ordered pretrial detention because of the sophistication of the fraud alleged in *Bikundi*, the present case does not require the same type of speculation as that court faced, because Mr. Patel has already demonstrated his commitment to appearing in the United States as required.

Finally, the Government's filings in this matter suggest that it views the involvement of cryptocurrency as an aggravating factor justifying Mr. Patel's detention here. In its motion, the Government describes the transaction at issue as "a complex scheme to conceal illicit cryptocurrency proceeds." Mot. for Pretrial Detention at 18. Looking beyond the Government's lengthy explanation of cryptocurrency wallets, though, this case centers on one transfer of Bitcoin between two accounts. *Id.* at 6.

Ultimately, the Government cannot show that the nature and seriousness of the present alleged offense—which involves a small fraction of the funds at issue in *MH Pillars*—can justify a conclusion that Mr. Patel is a greater risk of flight now than he was in 2019. Facing far more serious charges in that matter, Mr. Patel attended all necessary hearings and ultimately self-surrendered for his term of incarceration.

    **4.**    **Defendant Is Not a Danger to the Community**

The Government has not alleged that Mr. Patel should be detained on the basis of dangerousness pursuant to 18 U.S.C. § 3142(f)(2)(B). *See* Mot. for Pretrial Detention at 2. The undersigned counsel is also unaware of any evidence suggesting that Mr. Patel poses a danger to any person, nor does the Government argue that he should be detained as a risk to the community. *See id.* (seeking detention pursuant to 18 U.S.C. § 3142(f)(2)(A), which refers to "serious risk of flight"). Defendant has no history of violent crime or of alcohol or substance abuse, and he is charged with financial crimes without allegations of any form of accompanying violence.

The Government now argues that Mr. Patel "poses a danger of future obstruction." *Id.* As an initial matter, the cases cited in the Government's motion involved defendants whom the Government alleged posed dangers to the community, not risks of flight. *E.g.*, *United States v. DeGrave*, 539 F. Supp. 3d 184, 198 (D.D.C. 2021) ("Here, the government does not argue that Mr. DeGrave poses a flight risk . . . ."). Furthermore, Mr. Patel's frequent and consistent appearance in relation to U.S. court proceedings belies the Government's argument that he "has little to no respect for the Court's authority." Mot. for Pretrial Detention at 24. Mr. Patel's regular trips between Canada and the United States to meet with prosecutors, attend court hearings, and self-surrender for incarceration illustrate his commitment to abiding by the Court's release conditions.

## III.   CONCLUSION

Because the Government has not proven that no reasonable conditions can assure Mr. Patel's appearance as necessary, Defendant respectfully requests pretrial release.

Dated: May 23, 2023               Respectfully submitted,

*/s/ A. Jeff Ifrah*
A. Jeff Ifrah
Jacob Grubman (admitted *pro hac vice*)
IFRAH PLLC
1717 Pennsylvania Ave. NW
Suite 650
Washington, D.C. 20006
Tel.: (202) 524-4140
Fax: (202) 524-4141
jeff@ifrahlaw.com
jgrubman@ifrahlaw.com

*Attorneys for Defendant Firoz Patel*

## CERTIFICATE OF SERVICE

I hereby certify that, on May 23, 2023, I will electronically transmit the foregoing document to the Clerk of the Court using the CM/ECF system for filing, which will send a notification of such filing to all counsel of record.

Dated: May 23, 2023                                         Respectfully submitted,

*/s/ A. Jeff Ifrah*
A. Jeff Ifrah