## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,** | : |
| | : |
| | : |
| **v.** | : **Criminal No. 23-cr-166 (DLF)** |
| | : |
| **FIROZ PATEL,** | : |
| | : |
| **Defendant.** | : |
| | : |

## GOVERNMENT'S MOTION FOR EXCLUSION
## OF TIME UNDER THE SPEEDY TRIAL ACT

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves this Court to exclude 180 days from the calculation of time before which this matter must be brought to trial under the Speedy Trial Act, pursuant to 18 U.S.C. § 3161(h)(7)(B)(ii).   As grounds for this motion, the Government states as follows:

### FACTUAL BACKGROUND

#### A.  Defendant's Prosecution in the *Payza* Case

The defendant, Firoz Patel, and his brother, Ferhan Patel, were previously prosecuted for their role in operating MH Pillars Ltd., d/b/a Payza, an illegal online money transmitting business responsible for transmitting more than $250 million in transactions.   *See United States v. MH Pillars Ltd., et al.*, No. 18-cr-53.   The charges in the *Payza* case arose from Payza's transmission of funds with intent to promote the carrying on of unlicensed money transmission and illegal wire fraud schemes, such as pyramid schemes and Ponzi schemes; and from Payza's operation in the District of Columbia without the necessary D.C. money transmitting license.

On July 16, 2020, the defendant entered a guilty plea in the *Payza* case to a Superseding Information charging one count of Conspiracy under 18 U.S.C. § 371 to operate an unlicensed money transmitting business and to engage in international promotional money laundering, in

violation of 18 U.S.C. § 1960 and 18 U.S.C. § 1956(a)(2)(A).   *MH Pillars Ltd.*, No. 18-cr-53, ECF No. 81 (Information).   As part of his plea agreement, the defendant agreed to forfeiture of more than $4.6 million in seized "Payza funds," and to "any property, real or personal, involved in the offense to which [the defendant] was pleading guilty."   *MH Pillars Ltd.*, No. 18-cr-53, ECF No. 90 (Plea Agreement), at 11; *see* 18 U.S.C. § 982(a)(1) (providing for forfeiture of "any property, real or personal, involved in" any violation of 18 U.S.C. §§ 1956, 1957, or 1960).   The defendant also promised "to take all necessary actions to identify all assets over which [he] exercises or exercised control, directly or indirectly, at any time since November 2012 or in which your client has or had during that time any financial interest."   *MH Pillars Ltd.*, No. 18-cr-53, ECF No. 90, at 12.

On November 17, 2020, then-District Judge Ketanji Brown Jackson sentenced the defendant to 36 months of imprisonment to be followed by 24 months of supervised release.   *MH Pillars Ltd.*, No. 18-cr-53, ECF No. 136 (Judgment).   She also entered a forfeiture order ordering the forfeiture of "any property, real or personal, involved in the commission of Count One, and any property traceable to such property," as well as the forfeiture of $4,620,459.45 in seized "Payza funds."   *Id.*, ECF No. 132 (Final Consent Order of Forfeiture), at 4.

On February 4, 2021, the defendant moved to delay his self-surrender date by several months, citing health concerns arising from the ongoing COVID-19 pandemic.   *Id.*, ECF No. 141. The Court granted the extension, and then granted a second extension based on difficulties encountered when the defendant attempted to enter the country from Canada.   *See id.*, ECF Nos. 144, 146, 147.   The defendant eventually self-surrendered to Bureau of Prisons custody on June 11, 2021.

But in the period between his sentencing and self-surrender, on April 27, 2021, the defendant transferred 450 Bitcoin (BTC)[1] derived from Payza's operations—valued at $24,020,699.83 at the time—into a sham account opened under his father's name. The defendant did so in order to conceal those Payza-derived funds from forfeiture in his criminal case while he served his sentence.

**B. Defendant Launders 450 BTC in Payza Funds Subject to Forfeiture**

As alleged in the Indictment, and as further described in the Affidavit in Support of the Criminal Complaint and the government's prior pleadings, *see* ECF No. 1-1, 5, 11, 18, the defendant engaged in a complex scheme to conceal 450 BTC valued at more than $24 million to avoid forfeiture in the *Payza* prosecution.

On April 25, 2021, an interest-bearing account was opened in the name of Musa Patel, the defendant's father, at Blockchain.com. Blockchain.com is a virtual currency exchange based outside the United States with operations in the United Kingdom. The account was opened using the defendant's phone number (ending in 4662) and the defendant's email address (fijmeister@gmail.com). The account was registered to an address in Belize City, Belize; the same address in Belize was used by the defendant to incorporate at least six different shell

---

[1] The virtual currency bitcoin (abbreviated "BTC") is a form of value that is able to be transacted over the Internet using Bitcoin software. "This software permits users to create 'Bitcoin addresses,' roughly analogous to anonymous accounts, and to securely transfer bitcoin from one Bitcoin address to another. The identity of a Bitcoin address owner is generally anonymous, although law enforcement can often identify the owner of a particular Bitcoin address by analyzing the blockchain, which is essentially a distributed public ledger that keeps track of all Bitcoin transactions, incoming and outgoing, and records every address that has ever received a bitcoin and maintains records of every transaction." *United States v. Sterlingov*, 573 F. Supp. 3d 28, 31 (D.D.C. 2021) (cleaned up).

companies in connection with his operation of Payza.    The account was initially accessed from an Internet Protocol (IP) address that resolved to Canada, where the defendant was residing.

Two days later, on April 27, 2021, a deposit of 450 BTC (valued at $24,020,699.83) was made into the Blockchain.com account.    Blockchain analysis traced the funds to several principal sources which, in turn, appear to be derived from Payza's operations.

On April 30, 2021, Blockchain.com sent an email to fijmeister@gmail.com, the email address associated with the account, asking for more information about the nature and purpose of the deposit.    Blockchain.com had flagged the transaction due to a number of irregularities.

Later on the same day, April 30, 2021, Blockchain.com received a response from the fijmeister@gmail.com email address.    Google account records show that this address was registered in the name of "Fij Patel," but it was registered using the defendant's phone number (ending in 4662), and Google Pay records confirm the address was linked to the defendant at his address in Quebec, Canada.

Although the Blockchain.com account was opened in the name of Musa Patel (the defendant's father), the April 30, 2021 response purported to be from an individual named "Vineet Tewari."    Vineet Tewari is the name of an employee of Payza's branch in India called Crescent Business Solutions Private Limited, d/b/a Crescent Payments Private Limited.    The defendant's use of "Vineet Tewari" here is consistent with his prior use of Payza employees to open businesses and take actions to violate the law.    When asked to explain why the account was registered under a different name—just five days earlier—someone using the name "Vineet Tewari" responded: "That was the name of the person who setup the account in first place.    There was no way to

change the name before I took over to my name for verification."   When asked about the origin

of the funds, "Vineet Tewari" stated:

> The crypto currency was transferred from my friend's account, also at
> Blockchain.com who has loaned me the BTC to earn extra with.   The BTC was
> purchased in years before (2015-2016) and was sitting in his Blockchain account
> for a few years, before it was then transferred to Binance to trade with, and then the
> extra brought back to Blockchain.

That explanation was false, and the funds were instead traced to Payza proceeds that were funneled

into Bitcoin wallets controlled by the defendant.   Without receiving adequate explanation,

Blockchain.com eventually decided to freeze the customer account.

Correspondence continued between Blockchain.com and the fijmeister@gmail.com email

address from April 30, 2021 until June 4, 2021.   By early June, with the defendant's self-

surrender date of June 11, 2021 approaching, the tone of the messages from fijmeister@gmail.com

became increasingly confrontational.   In one of the final messages, dated June 2, 2021,

fijmeister@gmail.com demanded that Blockchain return the frozen funds—and signed the

message with the initial "F," the customary sign-off used by the defendant Firoz Patel in other

email messages.   He threatened to pursue legal action against Blockchain.com in the United

Kingdom and the United States, and closed with the following statement:   "If this is about me,

then realize that I am not beholden to any actions by USA or any other government authorities.   I

have paid my dues and I owe nothing to anybody."

On June 11, 2021, the defendant self-surrendered to begin his prison sentence from the

*Payza* case.   After that date, correspondence with Blockchain.com shifted to a second email

address, vineet.tewari6032@gmail.com.   Google account records indicate that this email address

was created on June 18, 2021.   Between June 19, 2021 and June 23, 2021, at least six emails were

traded between this email address and Blockchain.com in which Vineet Tewari claimed ownership of the 450 BTC and demanded that Blockchain.com unfreeze the account and return the funds.

Finally, on June 23, 2021, the defendant filed a claim in his own name in a court in the United Kingdom against Blockchain Access UK (*i.e.*, Blockchain.com), abandoning the pretense that the funds belonged to anybody else.

On January 11, 2022, a United States Magistrate Judge for the United States District Court for the District of Columbia issued a seizure warrant for the BTC held by Firoz Patel at Blockchain.com.

### C.  Arrest, Indictment, and Subsequent Proceedings

The defendant finished serving his sentence in April 2023 and was released to the custody of U.S. Immigration and Customs Enforcement (ICE) to be removed to Canada.   On April 25, 2023, the defendant was charged by Complaint (ECF No. 1) with Laundering of Monetary Instruments in violation of 18 USC § 1956(a)(1)(B)(i) and Engaging in Monetary Transactions in Property Derived from Unlawful Specified Activity in violation of 18 U.S.C. § 1957.   On or about April 27, 2023, the defendant was presented before a United States Magistrate Judge in the District of Massachusetts on the Criminal Complaint and was ordered to be transported to the District of Columbia.   On May 11, 2023, a grand jury indicted the defendant on the same two charges.

After litigating detention before this Court, the defense filed an interlocutory appeal of the Court's detention decision on May 31, 2023.   *See* ECF No. 24.   The D.C. Circuit summarily affirmed the defendant's pretrial detention in an unpublished per curiam decision issued on August 8, 2023.   *See United States v. Patel*, No. 23-3082 (D.C. Cir. Aug. 8, 2023).   The defense filed a

motion to transfer the case as related to Judge Moss on July 18, 2023.   *See* ECF No. 29.   After briefing, the Court denied the motion.   *See* July 29, 2023 Minute Order.   The government also flagged a potential conflict issue at the defendant's initial detention hearing on May 22, 2023, arising out of the defendant's retention in this case of the same attorneys who represented his brother and co-defendant in the *Payza* case, Ferhan Patel.   That potential conflict eventually led to the government's September 14, 2023 Motion to Appoint Conflict Counsel for the Defendant, ECF No. 35, which was resolved after conflict counsel was appointed and both the defendant and Ferhan Patel executed written conflict waivers.

### D.  Discovery

Following the defendant's presentment, detention litigation and the defendant's interlocutory appeal, litigation over the defendant's motion to transfer the case, and conflicts inquiry proceedings before Magistrate Judge Upadhyaya, the parties negotiated and entered a Protective Order to govern discovery in this case.   *See* ECF No. 36.   Once the Protective Order was in place, the government produced a substantial volume of discovery in this case, totaling approximately 78.1 GB.   The discovery produced to date includes voluminous financial records from cryptocurrency exchanges—including Binance, Bittrex, Blockchain.com, Circle, Coinbase, Gemini, HitBTC, Kraken, KuCoin, and Uphold—electronic search warrant records from Google, and the seizure warrant affidavit for the 450 BTC.   The government is in the process of collecting and preparing additional materials for discovery, including records relating to the blockchain analysis involved in tracing the 450 BTC to Payza.   Since the 450 BTC is traceable to the prior *Payza* case against the defendant and his brother, the government is also in the process of gathering the discovery from that case so it can be provided to defense counsel.   The government anticipates

that the volume of this discovery will also total a large number of gigabytes. The government also expects to disclose expert reports and present expert testimony regarding its blockchain analysis consistent with the requirements of the recently-amended Fed. R. Crim. P. 16.

On October 13, 2023, the defendant served a 6-page discovery letter on the government. In addition to making ordinary demands for Rule 16, *Brady*, *Jencks*, and *Giglio* discovery— discovery which the government is and will provide, regardless of defense demand—the discovery letter made numerous additional and sometimes novel demands, including:

- Indicating that the defense may file a motion to suppress.

- Demanding evidence of political bias or animus by agents and attorneys assigned to the case, citing the U.S. Department of Justice Office of Inspector General's report on the 2016 Presidential election investigation.   (The government is unaware of any political aspect to this money laundering prosecution of a convicted felon who concealed assets subject to forfeiture in his prior case, let alone impermissible bias or animus among the government's agents or attorneys.   The government will, of course, search for and produce any *Giglio* materials.)

- Demanding internal attorney communications by the former prosecutor assigned to the *Payza* case, now-Magistrate Judge Faruqui, under what appears to be a theory of entrapment by estoppel based on the defendant's allegation that "the government was aware of continued operations of Payza outside of the United States."   (Entrapment by estoppel, however, is an affirmative defense that requires the defendant to show "(1) a government official (2) told the defendant that certain criminal conduct was legal, (3) the defendant actually relied on the government official's statements, (4) and the

defendant's reliance was in good faith and reasonable in light of the identity of the government official, the point of law represented, and the substance of the official's statement." *United States v. Khanu*, 664 F. Supp. 2d 35, 41 (D.D.C. 2009).   The government is unaware of any good-faith basis for an entrapment by estoppel defense here.   And it is unclear what the relevance of internal attorney communications would be, let alone their discoverability, if they were never conveyed to the defendant and the defendant never reasonably relied on them.

## ARGUMENT

### A.  Legal Standard

The voluminous discovery and overall complexity of this case justifies a 180-day exclusion from the statutory period in which this case must be tried under the Speedy Trial Act.   *See* 18 U.S.C. § 3161(h)(7)(B)(ii).   Section 3161(h)(7)(A) allows the Court to exclude a period of delay from the Speedy Trial Act calculation if the Court finds "that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."   Section 3161(h)(7)(B) sets forth the factors the Court shall consider when determining whether to exclude time pursuant.   Where the Court finds that the case is "so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established", the Court may exclude such time as necessary to serve the ends of justice.   18 U.S.C. § 3161(h)(7)(B)(ii); *see also United States v. Speight*, 941 F. Supp. 2d 115, 118 (D.D.C. 2013) (case was complex because it alleged a "lengthy and far-reaching conspiracy involving a great deal of discoverable evidence, including wiretaps").

9

The Court has broad discretion to grant an exclusion of time when, in its view, the case's complexity requires that counsel have additional time to prepare in order to ensure a fair trial. *See United States v. Rojas-Contreras*, 474 U.S. 231, 236 (1985).   "During the excluded time, Defendants can review the materials being produced by the Government, and both sides can engage in meaningful plea discussions."   *Speight*, 941 F. Supp. 2d at 118.

Applying the factors set forth in Section 3161(h)(7)(B)(ii), courts have routinely excluded reasonable periods of time in cases similar in scale and complexity to the instant case, which spans multiple jurisdictions inside and outside of the United States.   *See United States v. Ditommaso*, 817 F.2d 201, 210 (2d Cir. 1987) ("[W]e agree that this multi-defendant, international drug smuggling and money-laundering case was sufficiently complex to warrant excludable time"); *United States v. Fogarty*, 692 F.2d 542, 546 (8th Cir. 1982) ("the complexity of the case, involving seven co-defendants and multiple overt acts occurring in seven states, outweighed the interests of the individual defendants" and justified exclusion of time).

Courts also look to the nature of the evidence in a "complex" case in adjudicating requests to apply the "interest of justice" provision of the Speedy Trial Act.   Findings of complexity and resulting exclusions of time have been based on the presence of voluminous discovery and novel questions of fact or law.   *See United States v. Beech Nut Nutrition Corp.*, 871 F.2d 1181, 1197-1198 (2d Cir. 1989) (finding that case in which the government made available to defendants approximately 30,000 documents was "complex within the meaning of the Speedy Trial Act"); *United States v. Larry Dean Harmon*, D.D.C. No. 19-cr-395 (BAH), Mar. 13, 2020 Minute Order (declaring case complex and excluding approximately 180 days in Bitcoin mixer case involving large volume of discovery and novel questions of fact and law).

10

**B. The Volume and Complexity of Discovery, Blockchain Analysis, and Potential Pretrial Litigation Supports Exclusion of Time**

The instant case is "complex."   First, the volume and complexity of the discovery weighs in favor of a complex case designation.   The government has produced voluminous records in discovery totaling approximately 78.1 GB, including more than 1,300 unique files.[2]   Included in the discovery are complicated financial records obtained from various cryptocurrency exchanges, including spreadsheets of account transaction activity and other technical information, such as IP and device login history.   The government is in the process of gathering the discovery from the prior case which will also be very large in volume and is complicated in its own right.   The government is also in the process of gathering and preparing additional discovery related to the government's blockchain analysis tracing the movement of Bitcoin from various Payza-affiliated sources to the 450 BTC transfer into the defendant's fake-name Blockchain.com account.   Such discovery will take time for the defense to adequately review.

Second, and relatedly, the government expects to disclose expert reports and present expert testimony regarding its blockchain analysis consistent with the requirements of the recently-amended Fed. R. Crim. P. 16.   Given the technical nature of blockchain evidence, the defense may wish to retain an expert of its own simply to review the government's analysis—if not to prepare a competing report and expert disclosure.   In another prosecution currently pending in this District, *United States v. Roman Sterlingov*, 21-cr-399 (RDM), there has been extensive pretrial litigation over the government's proposed blockchain analysis testimony, including multiple full-day evidentiary hearings and extensive briefing.   Judge Moss's ultimate resolution

---

[2]  This figure is based on the government's discovery platform, USAfx, and likely understates the number of unique files that are grouped together into .zip archive files.

of the issues in *Sterlingov* may well inform the proceedings in this case, and the defense could streamline this trial by agreeing to stipulate that the funds involved in the 450 BTC transaction were derived from Payza funds.   But at this point, it appears that the government's anticipated use of blockchain evidence will give rise to novel questions of fact and law.

Third, the defense has indicated that it is considering various pretrial motions, such as a motion to suppress or a dispositive motion to dismiss.   In addition, as referenced in the defendant's October 17, 2023 discovery letter, the defense appears to be contemplating certain novel (and in the government's view unmeritorious) affirmative defenses, such as entrapment by estoppel or a claim of politically-motivated selective prosecution.   The Court and parties will need adequate time to litigate any substantive pretrial motions.

Finally, after the defense has had a chance to fully review the discovery and/or the government's anticipated expert disclosures in this case, the parties may wish to engage in discussions of a resolution short of trial.

Under these unique circumstances, the 180-day exclusion requested in this motion will serve both the United States and the defendant, and ensure that this significant, complicated case is thoroughly prepared for trial.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the United States respectfully requests that this

Court enter an Order excluding from computation under the Speedy Trial Act a period of 180 days.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

BY:     /s/ Christopher B. Brown
        Arvind K. Lal, D.C. Bar No. 389496
        Christopher B. Brown, D.C. Bar No. 1008763
        Assistant United States Attorneys
        U.S. Attorney's Office for the District of Columbia
        601 D Street, N.W.
        Washington, D.C. 20530
        (202) 252-7688 (Lal)
        (202) 252-7153 (Brown)
        Arvind.Lal@usdoj.gov
        Christopher.Brown6@usdoj.gov