UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>FIROZ PATEL,<br><br>　　　*Defendant*. | No. 23-cr-166 (DLF) |

**DEFENDANT'S RESPONSE IN OPPOSITION
TO THE GOVERNMENT'S MOTION FOR EXCLUSION
OF TIME UNDER THE SPEEDY TRIAL ACT**

By and through undersigned counsel, Defendant Firoz Patel ("Mr. Patel"), files this Response in Opposition to the Government's Motion for Exclusion of Time Under the Speedy Trial Act. In support of the instant Response, Mr. Patel states the following:

**INTRODUCTION**

Six hundred fifty-five days. That is the amount of time that has elapsed since the Government obtained a warrant to seize 450 Bitcoin stored in a Blockchain.com account associated with Mr. Patel. In the nearly two years that have passed since the issuance of that warrant, the Government has failed to actively pursue this case – delaying requisite investigatory measures and filing an indictment only after Mr. Patel's release from custody was imminent. As a result of its dilatory investigative practices - nearly two years later - the Government is still "in the process of collecting and preparing additional materials for discovery, including records relating to the blockchain analysis involved in tracing the 450 BTC to Payza." ECF 39 at 7. Indeed, despite the numerous days, weeks, and months that have passed since the beginning of its investigation, the Government claims that it needs *more* time to prepare for trial and has taken the extraordinary step of requesting that this Court delay prosecution even further by excluding time for 180 days

1

under the Speedy Trial Act. Given the significant amount of time that has already elapsed since the Government began its investigation into the conduct underlying the instant case, such a delay would undermine, rather than serve the "ends of justice," as required by the Speedy Trial Act. 18 U.S.C. § 3161(h)(7)(A). Thus, irrespective of the alleged complexity of the instant case (which Mr. Patel does not concede), this Court should deny the Government's Motion to Exclude Time because it is reasonable to expect that after six hundred fifty-five days the Government would be prepared to bring this case to trial.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

The present matter stems from the Government's prosecution of Mr. Patel in the District Court for the District of Columbia in March 2018. *See United States v. MH Pillars Ltd.*, No. 1:18-cr-00053 (D.D.C.) (hereinafter, "*MH Pillars*"). In that case, Mr. Patel was indicted along with his brother, Ferhan Patel,[2] and their company, MH Pillars Ltd., which was incorporated in the United Kingdom and doing business as "Payza." *See generally MH Pillars*, ECF 1. The Government alleged that Firoz and Ferhan Patel "knowingly conspired to operate unlicensed money transmission businesses," in violation of U.S. money transmission laws. *Id.* at 8.

In July of 2020 Mr. Patel and the Government reached a plea agreement whereby Mr. Patel pled guilty to Conspiring to Commit Offenses Against the United States, in violation of 18 U.S.C. § 371, and was eventually sentenced to thirty-six months in prison. *MH Pillars*, ECF 136. As part of the plea agreement, the defendants also agreed to forfeit "any property, real or personal, involved in the commission of [the conspiracy], and any property traceable to such property," specifically

---

[1] If the Court were to grant the Government's Motion and permit an additional delay of 180-days, it should reconsider the issue of Mr. Patel's pre-trial incarceration to ensure the ends of justice are served.
[2] This filing refers to Defendant Firoz Patel as, "Mr. Patel." Ferhan Patel will be identified by his full name or his first name.

including various funds that had previously been seized. *Id*., ECF 132. In other words, the defendants were required to forfeit any funds related to Payza's unlawful U.S.-based operations. Mr. Patel self-surrendered to the Bureau of Prisons' custody on June 1, 2021, and was subsequently released from custody in April of 2023. Following his release, Mr. Patel was transferred to U.S. Immigration and Customs Enforcement ("ICE") custody for transportation back to Canada. After approximately 10 days in custody, Mr. Patel was re-arrested on the present charges.

In the present matter, the Government alleges that on April 27, 2021, Mr. Patel transferred 450 Bitcoin allegedly derived from Payza's U.S.-based operations between two cryptocurrency accounts. *See* ECF 18 at 3; *see also* ECF 5 (Indictment). The Government further alleges that Mr. Patel concealed his identity in engaging in this transaction, although the Government does not allege that he concealed his ownership of the transferring account. Mr. Patel disputes these allegations.

While the present case was formally initiated via criminal complaint on April 25, 2023, the Government has been aware of the assets at issue since some time prior to January 11, 2022, when a federal magistrate issued a seizure warrant for the Bitcoin. Upon information and belief, the Government initially contacted Mr. Patel's former attorney (who represented him during the *MH Pillars* case) to resolve this matter through a civil disposition – i.e., civil forfeiture of the Bitcoin at issue. However, the opportunity for a civil disposition fell through and the Government instead pursued the criminal prosecution of Mr. Patel.

Four hundred and seventy days after obtaining the seizure warrant, the Government filed a criminal complaint in the instant case, ECF 1, and Mr. Patel was re-arrested and removed from ICE custody. A grand jury returned a sealed indictment on May 11, 2023, charging Mr. Patel with (1) Laundering of Monetary Instruments in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and (2)

Engaging in Monetary Transactions in Property Derived from Unlawful Specific Activity in violation of 18 U.S.C. § 1967. ECF 5.

Following Mr. Patel's indictment, the parties litigated Mr. Patel's pre-trial detention before this Court. On May 31, 2023, after considering the statutory factors outlined by the Bail Reform Act, this Court ordered Mr. Patel to be detained pending trial. ECF 22. That day, Mr. Patel filed an interlocutory appeal of the Court's detention decision. ECF 24. Following briefing by the parties, the D.C. Circuit Court affirmed this Court's ruling in a per curium decision issued on August 8, 2023. *United States v. Patel*, No. 23-3082 (D.C. Cir. Aug. 8, 2023).

Given the interconnectedness of the instant matter and the *MH Pillars* case, Mr. Patel filed a motion to transfer this case, as a related case, to Judge Moss, the judge assigned to *MH Pillars*. ECF 29. After briefing, the Court denied Mr. Patel's motion. Subsequently, at a hearing on May 22, 2023, the Government raised issue with Mr. Patel's choice of counsel, alleging that there may be a potential conflict of interest given that undersigned counsel represented Mr. Patel's brother, Ferhan Patel, in the *MH Pillars* litigation. Following the hearing, the Government filed a Motion to Appoint Conflict Counsel for Defendant. ECF No 35. Soon thereafter, both Firoz and Ferhan Patel executed written conflict waivers, thereby resolving the Government's concern.

Following the execution of a Protective Order, ECF 36, the Government provided Mr. Patel with its first production of discovery materials, including, but not limited to, financial records, documents related to various cryptocurrency exchanges, and investigative documents such as the seizure warrant affidavit for the 450 BTC. Additionally, the Government has indicated that it is still "in the process of collecting and preparing additional materials for discovery, including records relating to the blockchain analysis involved in tracing the 450 BTC to Payza." ECF 39 at 7. To this end, the government represents that it eventually "expects to disclose expert reports and

present expert testimony regarding its blockchain analysis." ECF 39 at 8. However, the Government has yet to provide a date upon which it expects to produce these additional discovery materials.

Given the outstanding discovery still to be produced, counsel for Mr. Patel served a discovery letter on the Government requesting additional materials related to the Government's disclosure obligations under *Brady*, *Jencks*, and *Giglio*, along with other potentially relevant documentation that could be used to support the filing of pre-trial motions and/or the assertion of affirmative defenses.

Following a status hearing on October 11, 2023, the Government filed the instant Motion for Exclusion of Time Under the Speedy Trial Act, requesting that this Court exclude 180 days from the calculation of time before which Mr. Patel must be tried under the Speedy Trial Act. ECF 39.

## **LEGAL STANDARD**

The Speedy Trial Act requires that a federal criminal trial "shall commence within seventy days" after the filing or unsealing of the charging document or after the defendant makes an initial appearance, whichever date last occurs. 18 U.S.C. § 3161(c)(1). The Supreme Court has declared that this provision is "unequivocal." *Zedner v. U.S.*, 547 U.S. 489, 507 (2006). Accordingly, "[w]hen a trial is not commenced within the prescribed period of time, 'the information or indictment *shall be dismissed* on motion of the defendant.'" *Id.* (emphasis added).

However, the Speedy Trial Act allows for specific, limited exceptions to the general requirement that a defendant must be brought to trial within seventy days. *United States v. Pikus*, 39 F.4th 39, 52 (2d Cir. 2022). To this end, "the Act provides a detailed scheme through which periods of delay attributable to specified reasons are excluded from the 70-day calculation." *Id.*

(citing 18 U.S.C. § 3161(h)). One such enumerated reason for delay arises when the case is "so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established" by the Speedy Trial Act. 18 U.S.C. § 3161(7)(B)(ii). Under this exception, any period of delay attributable to the court's finding that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial," shall be excluded in computing the time within which the trial must commence. *See id.* § 3161(h)(7)(A). However, "even when a case is undisputedly complex, complexity *per se* is not an excuse for indefinite delay or a means of circumventing the requirements of the Speedy Trial Act." *United States v. Solomon*, Case No. 23-cr-156 (SRN/TNL) 2023 WL 3580821, at *3 (D. Minn. May 22, 2023) (quoting *Pikus*, 39 F.4th at 53) (quotations and citations omitted in original).

## DISCUSSION

A. **The Ends of Justice Would Not be Served by a 180-day Exclusion Because it is Reasonable to Expect the Government to be Prepared for Pretrial Proceedings or Trial After Six Hundred Fifty-Five Days.**

As noted above, the Speedy Trial Act provides for the exclusion of time when the case is "so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is *unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established*," by the Speedy Trial Act. 18 U.S.C. 3161(h)(7)(B)(ii) (emphasis added). Thus, the very language of this provision indicates that the complexity of the case is not dispositive as to whether the Court should grant a motion to exclude time under the Speedy Trial Act. *See Solomon*, 2023 WL 3580821, at *3. Rather, the complexity of the case must be balanced against the reasonableness of the delay in light of the

6

circumstances of the case. *Pikus*, 39 F.4th at 54 (citing *U.S. v. Gambino*, 59 F.3d 353, 359 (2d Cir. 1995) (instructing that an exclusion for complexity must be "reasonably related to the actual needs of the case.")). In other words, a case's complexity will not justify an exclusion of time if it would otherwise be reasonable to prepare for pretrial proceedings or trial in the time provided for by the Speedy Trial Act.

At this juncture, and regardless of the alleged complexity of the present case (which Mr. Patel does not concede) it is reasonable to expect the Government to be adequately prepared for pretrial proceedings or trial without the imposition of an additional 180-day delay. The conduct at issue in the underlying case occurred in April of 2021, nearly two-and-half years ago and before Mr. Patel surrendered himself to the custody of the Bureau of Prisons to serve the sentence imposed in *MH Pillars*. By the Government's own admission, it has been aware of Mr. Patel's alleged conduct since, at the latest, January 11, 2022, when Magistrate G. Michael Harvey signed a warrant authorizing the seizure of the Bitcoin at issue. ECF 39 at 6.

In the six hundred fifty-five days since that seizure warranted was signed, the Government has delayed taking meaningful steps to investigate and prosecute this case. Despite having nearly two years to prepare for trial, the Government contends that it is still in the process of "gathering and preparing," discovery. *Id.* at 11. Included in the discovery yet to be gathered is the "government's blockchain analysis tracing the movement of Bitcoin from various Payza-affiliated sources to the 450 BTC transfer" into the Blockchain account allegedly belonging to Mr. Patel. *Id.* This analysis is key to Mr. Patel's alleged culpability in the instant case, given that only blockchain analysis and tracing can be used to try to establish whether the Bitcoin at issue constituted proceeds of Payza's U.S.-based operations – a prerequisite to the funds' forfeitability. *MH Pillars*, ECF 132. Indeed, the gravamen of the present charge is that the Bitcoin was subject to the District Court's

7

forfeiture order. Given the central significance of the source of the funds at issue, it would be reasonable to expect that the Government would have conducted this analysis at the outset of its investigation, and, as a result, would have been able to provide the analysis to the defense at the inception of the discovery exchange. Unfortunately, much to the detriment of Mr. Patel who remains detained, this is not the case.

Rather, the Government's dilatory investigative tactics have created serious repercussions for the defense. As recognized in its own Motion, the Government's expert blockchain analysis will demand close analysis and scrutiny by the defense – a process which will likely require the defense to retain an expert of its own. ECF 39 at 11. While the defense has attempted to proactively prepare for this process, it is constrained in its ability to do so, given that the Government has yet to disclose its expert, produce its expert's report, or provide any other form of blockchain evidence that would prove that the funds at issue are traceable to Payza's U.S.-based operations. In this regard, the defense cannot move forward with its own pre-trial preparation because of the Government's delay in producing its expert analysis. The Court should not permit this delay to be further extended given that the Government has already had nearly two years to obtain their expert's blockchain tracing analysis. The Government cites the defense's need for discovery and likely pretrial motions as a justification for delay when it is their own inattention to obtaining and providing such discovery that handcuffs defense counsel's ability to prepare in the first place.

Similar circumstances were examined by the Second Circuit in the case of *United States v. Pikus*, 39 F.4th 39 (2d Cir. 2022), in which the Court ultimately vacated the defendant's convictions on the basis of the Government's violation of the Speedy Trial Act. *Id.* at 42. In that case, the Government had "sporadically and haphazardly produced" various documents requested by the defendant, ultimately prolonging the discovery process for several years. *Id.* The District Court

permitted these discovery-based delays to continue and excluded the time from Speedy Trial Act calculation because the case had been designated as complex at its inception. *Id.* at 44-50. The defendant filed two motions for dismissal of the indictment on speedy trial grounds, both of which were denied by the District Court. *Id.* at 42.

The Court of Appeals reversed, holding that the District Court had neither "held the Government accountable for its discovery obligations nor appropriately considered the causes and implications of the extraordinary delays introduced by the Government's dilatory conduct of discovery." *Id.* at 58. In reaching this conclusion, the Court reasoned that although the case was seemingly complex, involving allegations of Medicare fraud and money laundering, the "Government's discovery conduct was the true cause of the delay." *Id.* at 54-55. Because of the Government-induced delay, and the District Court's failure to correct it, the Court concluded that the "[t]he best interest of the public and the defendant in a speedy trial," required vacatur of the defendant's convictions. *Id.* at 58. Thus, *Pikus* stands for the principle that the District Court should not allow the Government to unduly delay prosecution through the unwarranted exclusion of time when the delay is attributable to the Government's own dilatory discovery practices.

Here too, the Government has slowed the pace of this prosecution from its inception. For example, despite initiating its investigation on January 11, 2022 (at the latest), the Government waited until April 25, 2023, to indict Mr. Patel – the same month that Mr. Patel had been released from prison to the custody of U.S. Immigration and Customs Enforcement to be removed to his home in Canada. ECF 39 at 6. That was more than six months ago and yet, the Government has yet to identify its expert or produce its expert report to defense counsel in relation to the blockchain analysis that forms the basis of the alleged culpability in this case. Indeed, at the hearing on October 11, 2023, the Government announced that their need to consult an expert on blockchain

9

analysis as well as the particular tracing in this transaction was of direct importance to their motion to toll, yet even now there has been no discovery provided relating to these experts. Furthermore, the Government now contends that an additional 180-day delay is warranted because it is still "in the process of gathering discovery from [*MH Pillars*]," – a case that was resolved more than two and a half years ago and involved some of the same Government attorneys appearing in the instant case. *Id.* at 11.

Given the Government's repeated delays, the ends of justice would not be served by the exclusion of the requested 180-day period. The Government's discovery and investigative practices have already prolonged the discovery process and inhibited defense counsel's ability to quickly prepare for trial. The instant request for an exclusion of time is merely an attempt to circumvent the requirements of the Speedy Trial Act and accommodate the Government's own self-imposed discovery delays. Given these circumstances, the Government should not be permitted to drag its feet without consequence any longer than it already has, particularly as Mr. Patel sits in the Northern Neck Regional Jail.

### B. The Case is Distinguishable from Other Cases Previously Designated as Complex.

Even if this Court does not find the Government's lack of preparation, after six hundred fifty-five days, to be unreasonable, it should nevertheless deny the Government's Motion because the instant case does not warrant designation as "complex." The instant case is distinguishable from those in which the Court has provided a complex case designation, and accordingly, permitted an exclusion of time under the Speedy Trial Act.

The Government attempts to manufacture complexity by highlighting the amount of discovery to be exchanged amongst the parties. *See* ECF 39 at 9-11. However, large quantities of discovery materials are only one factor, among many, that courts must consider when determining whether to exclude time under the Speedy Trial Act. Indeed, several other circumstances, such as the

number defendants, the number of charges, and the length and complexity of the alleged criminal scheme are also relevant to the Court's analysis. *Pikus,* 39 F.4th 53 ("Cases are 'complex' where they, for example, involve numerous defendants, novel legal issues, myriad claims, or many necessary witnesses.'"). For example, in *United States v. Raniere*, the Eastern District of New York designated a case as "complex" when the indictment charged six defendants with a variety of crimes, there was voluminous and complex discovery, and the crime alleged in the indictment related to over a dozen separate schemes and included a fifteen-year-long racketeering conspiracy. 18-CR-204 (NGG), 2018 WL 4471632, *1 (E.D.N.Y. 2018). Similarly, in *United States v. Babichenko*, the District Court designated the case as complex when it involved ten defendants; a thirty-four-count indictment related to a conspiracy that spanned a decade; and involved terabytes of discovery in addition to tens of thousands of counterfeit goods and other physical pieces of evidence to be reviewed. Case No. 1:18-cr-00258-BLW, 2018 WL 6310264, at *1 (D. Idaho Nov. 30, 2018).

By contrast, in this case, there is only one defendant who is accused of making a single, allegedly unlawful transaction. *See* ECF 5. To this end, the indictment charged Mr. Patel with only two, factually similar counts. *Id.* at 1-2. Furthermore, although the Government attempts to characterize the alleged transfer of Bitcoin as complex, the transaction at issue was rather straightforward. It is alleged that Mr. Patel used a website to transfer funds between accounts and then communicated with that platform using his personal email address. This is an every-day occurrence in our technologically driven economy and this type of account-to-account transfer is made by millions of Bitcoin holders each day.[3] Accordingly, although tracing the source of the

---

[3] There are approximately 46 million U.S. crypto users and approximately 420 million worldwide. *Cryptocurrency Ownership Data*, TRIPLE A (2023), https://triple-a.io/crypto-ownership-data/.

funds requires expert analysis, the transaction itself is relatively straightforward. Furthermore, the mere requirement that an expert provide an opinion should not automatically render this case complex.

Finally, with regard to the volume of discovery in this case, the Government argues that the case should be designated as complex given that the government "has produced voluminous records in discovery totaling approximately 78.1 GB, including 1,300 unique files." ECF 39 at 11. Similarly, the Government predicts that will, at some unspecified time in the future, produce "additional discovery related to the government's blockchain analysis." *Id.* Notably, the Government fails to specify the quantity of discovery still to be produced, leaving the defense, and this Court, to speculate as to the true volume of material to be reviewed.

The defense acknowledges that significant discovery is involved in the instant litigation. However, the discovery produced (and to be eventually produced by the Government) does not rise to the level contemplated by other District Courts that have granted an exclusion of time on the basis of complexity. For example, in *United States v. Conley*, the District Court granted an exclusion of time based on the case's complexity given that the "Government ha[d] provided over 4.5 terabytes of electronic discovery, which include[d] over 300,000 electronic files and other types of discovery." Criminal No. 2:22cr147, 2023 WL 5807835, at *2 (E.D. Va. Sept. 7, 2023). Similarly, in *U.S.A. v. Ruiz*, the case was designated as complex when the Government produced more than two terabytes of information, 200,000 pages of hard-copy search warrant materials, and thousands of pages of documents. Case No. SACR 11-209-JST, 2013 WL 12219168, at *1 (C.D. Cal. 2013). Here, the discovery materials produced thus far are significant, but fail to rise to a level warranting an additional 180-day delay on the basis of complexity. To the extent the Government predicts it will produce additional discovery, the volume of material to be provided is speculative

at best. The Government's uncertainty should not serve as the basis for a complexity designation and corresponding exclusion of time under the Speedy Trial Act. Given these circumstances, the Court should deny the Government's Motion for Exclusion of Time on the basis of the alleged complexity of this case.

### C. If the Court Grants the Government's Motion It Should Reconsider Mr. Patel's Pre-Trial Detention.

The Government's arguments for further delay must also be viewed in light of the fact that, pending resolution of the instant litigation, Mr. Patel remains incarcerated. Indeed, the Speedy Trial Act instructs that the Court should exclude time only if the "ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). To this end, any benefit provided to the Government by the exclusion of a 180-day period should be weighed against the interest that both Mr. Patel, and the public at large, have in bringing this case to trial in a timely manner. In conducting this balancing test, the Court should consider that the Speedy Trial Act and the Bail Reform Act were intended to complement one another, ensuring that a defendant who is detained prior to trial will be tried in a timely manner. *United States v. Colombo*, 777 F.2d 96, 101 (2d Cir. 1985) ("Congress expected, when enacting the Bail Reform Act in 1984, that the Speedy Trial Act would protect against overlong periods of pretrial incarceration."). Here, Mr. Patel's liberty interests outweigh any benefit that would be provided by an additional 180-day delay in this already prolonged case. Thus, if the Court is inclined to grant the Government's Motion, it should, in light of these complementary statutory frameworks, reconsider Mr. Patel's pre-trial detention.

**CONCLUSION**

For the foregoing reasons, Mr. Patel, by and through undersigned counsel, respectfully requests that the Court deny the Government's Motion for Exclusion of Time Under the Speedy Trial Act.

Dated: October 27, 2023

                                                Respectfully submitted,

                                                */s/ A. Jeff Ifrah*
                                                A. Jeff Ifrah (D.C. Bar No. 456661)
                                                James Trusty (D.C. Bar No. 198359)
                                                1717 Pennsylvania Ave. NW
                                                Ste. 650
                                                Washington, D.C. 20010
                                                (202) 524-4140
                                                jeff@ifrahlaw.com
                                                jtrusty@ifrahlaw.com

                                                *Counsel for Defendant Firoz Patel*

## CERTIFICATE OF SERVICE

      I hereby certify that on the 27th day of October 2023, I filed the foregoing with the Clerk of Court using the CM/ECF system, which sent a notification of such filing to counsel of record in this matter.

Dated: October 27, 2023                                                                      */s/ A. Jeff Ifrah*
                                                                                                                                                                     A. Jeff Ifrah