**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES, <br><br> v. <br><br> FIROZ PATEL, <br><br> *Defendant.* | No. 23-cr-166 (DLF) |

## <u>MEMORANDUM OPINION & ORDER</u>

In *United States v. MH Pillars Ltd.*, No. 18-cr-53, Firoz Patel pleaded guilty to conspiracy to commit crimes against the United States and conspiracy to launder money. Between sentencing and his self-surrender to prison, however, Patel allegedly transferred 450 Bitcoin (approximately $24 million) to a Blockchain.com account in the United Kingdom. The government seized the 450 Bitcoin, alleging that some portion of it is subject to forfeiture as unlawful proceeds from *MH Pillars*. The government subsequently charged Patel with money laundering and engaging in monetary transactions in property derived from specified unlawful activity.

Patel now seeks various forms of relief. Before the Court are Patel's (1) Motion to Dismiss for Lack of Subject Matter Jurisdiction, Dkt. 69; (2) Motion to Dismiss Indictment for Double Jeopardy Violation or, in the Alternative, as Specific Performance for Breach of Plea Agreement, Dkt. 68; and (3) Motion to Suppress or, in the Alternative, Request for a *Franks* Hearing, Dkt. 66. Earlier this week, Patel informed the Court that he may pursue an interlocutory appeal and seek a stay of proceedings if this Court denies either of his motions to dismiss. Trial is set to begin on May 20, 2024, and if at all possible, the Court has every intention of preserving the trial date given it has already granted a continuance of the original April 15, 2024 trial date. To expedite any forthcoming interlocutory appeal, the Court is issuing this memorandum opinion and order on

Patel's motions to dismiss; in short order, the Court will issue a second opinion addressing Patel's motion to suppress. The forthcoming memorandum opinion and order will contain a more comprehensive discussion of the facts underlying the charges in this case.

For the reasons that follow, the Court will deny Patel's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Motion to Dismiss Indictment for Double Jeopardy Violation or, in the Alternative, as Specific Performance for Breach of Plea Agreement.

## I.    SUBJECT-MATTER JURISDICTION

Patel first asks the Court to dismiss the indictment on the theory that the Court lacks subject matter jurisdiction because he is a Canadian citizen and his alleged offense conduct "bear[s] no cognizable connection to the United States." Mot. to Dismiss at 1, Dkt. 69. His prosecution would thus be "an impermissible application of U.S. law to foreign conduct." *Id.* Patel's motion is meritless.

"A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). This includes a "motion that the court lacks jurisdiction." *Id.* 12(b)(2). "When considering a motion to dismiss an indictment, a court assumes the truth of [the indictment's] factual allegations." *United States v. Ballestas*, 795 F.3d 138, 149 (D.C. Cir. 2015). Although Patel does not frame his filing as a Rule 12 motion to dismiss, the Court will construe it as such because he seeks dismissal of the indictment based on the Court's lack of jurisdiction. The specific thrust of his motion is that his alleged offense conduct did not occur in the United States, as is required under both counts of the indictment.[1]

---

[1] It is premature for the Court to rule on the parties' responses to the Court's proposed jury instructions and finalize the elements of the charged offenses. Previously, the Court preliminarily noted that "neither the face" of 18 U.S.C. §§ 1956(a)(1)(B)(i) nor 1957(a) appear to impose any requirement that the "specified unlawful activity" occurred in the United States. *See* Order of Feb. 7, 2024 at 4 n.1, Dkt. 70. That said, the Court acknowledges—again preliminarily—that both statutes appear to require U.S.-based offense conduct in some circumstances. Specifically, as applied to a *non*-U.S. citizen, 18 U.S.C.

The Court is unpersuaded. To begin, Patel incorrectly frames the issue of extraterritoriality as a jurisdictional one. "Subject-matter jurisdiction presents a threshold question in any federal prosecution," and the Court may exercise the judicial power only over "those cases over which Congress has conferred subject-matter jurisdiction." *United States v. Baucum*, 80 F.3d 539, 540 (D.C. Cir. 1996) (per curiam). In a criminal case, the jurisdictional inquiry rises and falls on whether the charging instrument "alleges the violation of a crime set out in Title 18 or in one of the other statutes defining federal crimes." *United States v. Fahnbulleh*, 752 F.3d 470, 476 (D.C. Cir. 2014). That requirement is plainly satisfied here because a grand jury indicted Patel on counts for Laundering of Monetary Instruments in violation of 18 U.S.C. 1956(a)(1)(B)(i) and Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity in violation of 18 U.S.C. 1957(a). Indictment at 1–2, Dkt. 5.

Patel nevertheless asserts that extraterritoriality is a "fundamental jurisdictional issue[]," Reply Br. at 2, Dkt. 78, but he provides no supporting authority for this proposition. Nor could he. "[E]xtraterritoriality is not a question of subject-matter jurisdiction—so long as [the defendant] is charged with a federal crime, the district court has subject-matter jurisdiction to hear his case." *United States v. Ghanem*, 993 F.3d 1113, 1131 n.6 (9th Cir. 2021). As the Supreme Court has made clear, the presumption against extraterritoriality is a canon of statutory construction emanating from the "basic premise of our legal system that, in general, United States law governs domestically but does not rule the world." *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 335 (2016) (cleaned up). In other words, extraterritoriality is merely a "presumption about a statute's

---

§ 1956(f)(1) requires that "the conduct occur[ed] in part in the United States" and 18 U.S.C. § 1957(d)(2) requires that the offense "takes place in the United States." *Accord* 18 U.S.C. § 1956(b)(2) ("[T]he foreign person commits an offense . . . involving a financial transaction that occurs in whole or in part in the United States."). The government may satisfy these requirements by showing that at least some part of the offense conduct (though not necessarily the specified unlawful activity) occurred in the United States.

meaning" and geographic reach, but it can be rebutted. *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010). True, Patel is charged under 18 U.S.C. § 1956, which contains a subsection styled as "extraterritorial jurisdiction," *see* 18 U.S.C. § 1956(f), but this is not a true limit on the Court's subject-matter jurisdiction, *see Ghanem*, 993 F.3d at 1131 n.6. Rather, it is a limit on the geographic reach of § 1956.

In any event, the presumption against extraterritoriality is not triggered here because the government intends to prove at trial that Patel's offense occurred domestically, not abroad. *See Env't Def. Fund, Inc. v. Massey*, 986 F.2d 528, 531 (D.C. Cir. 1993) (noting that "the presumption against extraterritoriality is not applicable when the conduct regulated by the government occurs within the United States"). At the Rule 12 stage, the Court must "assume[] the truth of the government's proffered facts . . . including with regard to whether the [defendant] was subject to the jurisdiction of the United States." *Ballestas*, 795 F.3d at 149. Here, the indictment explicitly alleges that both offenses occurred "within the venue of the United States District Court for the District of Columbia."[2] *See* Indictment at 1–2. Further, as the Court previously explained in its order denying Patel's motion for a bill of particulars, *see* Order of Feb. 7, 2024 at 4–5, the affidavit supporting the criminal complaint alleges that the "entirety of the 450 Bitcoin can be traced back to the time period that Firoz Patel was running Payza and the illegal activity of Payza is the source of the Bitcoin," Aff. in Supp. of Crim. Compl. at 37, Dkt. 1-1. Per the affidavit, Payza's focus was on "the transmission of funds from numerous locations in the United States," *id.* at 8, and "Payza used personal and business bank accounts at financial institutions in the United States," *id.* at 7. Assuming the truth of these allegations, as it must at this stage, the Court is satisfied that the indictment contains "essential facts constituting" the charged offenses, Fed. R. Crim. P. 7(c)(1),

---

[2] The Court notes that the indictment currently alleges that venue was in "the United States District Court for the District of Columbia" rather than the "District of Columbia." *See, e.g.*, Indictment at 1.

and that the criminal complaint provides Patel sufficient notice of what the government intends to prove at trial. *Cf. United States v. All Assets Held at Bank Julius*, 251 F. Supp. 3d 82, 97 (D.D.C. 2017) (finding an offense "takes place" in the United States under § 1957 where it involves "transfers to accounts in U.S. financial institutions").

The D.C. Circuit's decision in *Ballestas* is not to the contrary. In *Ballestas*, "a Colombian citizen, was indicted under the Maritime Drug Law Enforcement Act . . . and extradited to the United States for prosecution." *Ballestas*, 795 F.3d at 141. The district court denied the defendant's motion to dismiss the indictment on the ground that the Act's conspiracy provision extended extraterritorially. *See id.* at 142–43. On appeal, Ballestas argued, as Patel does here, that the district court erred by "accepting the government's allegations as true" that a "vessel [was] subject to the jurisdiction of the United States." *Id.* at 148. But the D.C. Circuit handily rejected this argument, holding that "[w]hen considering a motion to dismiss an indictment, a court assumes the truth of those factual allegations." *Id.* at 149. In Ballestas's case, the district court properly "assumed the truth of the government's proffered facts," including "with regard to whether the pertinent vessel was subject to the jurisdiction of the United States." *Id.* So too here: the Court may assume the truth of the government's allegations that Patel's unlawful activity occurred, at least in part, in the United States.

Finally, although it is not at issue in this case, the statutes charged here, 18 U.S.C. § 1956 and § 1957, rebut the presumption against extraterritoriality. In *RJR Nabisco*, the Supreme Court formalized a two-step test for analyzing when a federal law should be applied extraterritorially. "First, the Court asks whether the presumption against extraterritoriality has been rebutted—*i.e.*, whether the statute gives a clear, affirmative indication that it applies extraterritorially." *RJR Nabisco, Inc.*, 579 U.S. at 326. Second, "[i]f, and only if, the statute is not found extraterritorial

at step one, the Court moves to step two, where it examines the statute's 'focus' to determine whether the case involves a domestic application of the statute." *Id.*

The Court's inquiry begins and ends with the first step. As to § 1956, Congress has given "clear, affirmative indication that it applies extraterritorially." *Id.* § 1956 provides that "[t]here is extraterritorial jurisdiction over the conduct prohibited by this section if . . . in the case of a non-United States citizen, the conduct occurs in part in the United States" and "the transaction or series of related transactions involves funds or monetary instruments . . . exceeding $10,000." 18 U.S.C. § 1956(f). Likewise, § 1957 applies to an offense that "takes place outside the United States" if "the defendant is a United States person." *Id.* § 1957(d)(2). Both statutes thus rebut the presumption subject to certain conditions. But again, this point is academic because the government intends to introduce evidence at trial that Patel's conduct occurred domestically.

\* \* \*

The Court agrees with the government that Patel's motion, at bottom, seeks a "mini-trial" on the government's proof. Opp'n at 1, Dkt. 74. Patel apparently concedes as much, arguing the government "must show its work" by "trac[ing] the transactions back to the United States." Reply Br. at 2. This is plainly an inappropriate argument to raise at this stage of the proceedings. The Court will deny Patel's invitation to assume the fact finder's role in evaluating the strength of the government's evidence before trial. *See United States v. Wilson*, 26 F.3d 142, 159 (D.C. Cir. 1994). Patel is free to challenge the government's U.S.-nexus evidence at trial or through a Rule 29 or other motion after trial. In the first instance, however, whether Patel's unlawful activity occurred, at least in part, in the United States is an issue for the finder of fact to resolve.

## II.    DOUBLE JEOPARDY CLAUSE

Patel has failed to demonstrate that this prosecution would violate the Double Jeopardy Clause because he previously pleaded guilty in *United States v. MH Pillars Ltd.*, No. 18-cr-53.

The Fifth Amendment provides that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  Among other things, the Double Jeopardy Clause protects "against a second prosecution for the same offense" after acquittal or conviction.  *United States v. Rosenberg*, 888 F.2d 1406, 1409 (D.C. Cir. 1989).  To determine whether a double-jeopardy violation has occurred in the multiple-prosecution context, the Court applies the "same-elements test, sometimes referred to as the '*Blockburger*' test."  *United States v. Dixon*, 509 U.S. 688, 696 (1993) (citing *Blockburger v. United States*, 284 U.S. 299 (1932)).  Under *Blockburger*, the Court "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars . . . successive prosecution."  *Id.*  "If the charges at issue are not the 'same offense' under that test, double jeopardy does not bar prosecution."  *United States v. Trump*, 91 F.4th 1173, 1207 (D.C. Cir. 2024).

This case easily passes the *Blockburger* test.  In *United States v. MH Pillars Ltd.*, No. 18-cr-53, Patel pleaded guilty to conspiracy to commit offenses against the United States in violation of 18 U.S.C. § 371 and conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(h).  *See* Plea Agreement at 1, *United States v. MH Pillars Ltd.*, No. 18-cr-53, Dkt. 90.  Here, Patel is charged with the laundering of monetary instruments in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957(a).  *See* Indictment at 1–2, Dkt. 5.  Plainly, each new count "requires proof of a fact" that the *MH Pillars* counts "d[id] not."  *Blockburger*, 294 U.S. at 304.  The current charges are substantive offenses that require commission of the crime (i.e.,

actual money laundering or engaging in unlawful monetary transactions).  In contrast, Patel's previous charges were conspiracy offenses that do not require actual commission of the offense but do require "agreement or confederation to commit [the] crime"—the latter of which is not required for the substantive offenses.  *United States v. Felix*, 503 U.S. 378, 390 (1992); *see* Tr. of Plea Hearing at 24:11–23, *MH Pillars*, No. 18-cr-53, Dkt. 150.  This analysis comports with the well-established principle that an "agreement to do [an] act is distinct from the act itself."  *United States v. Bayer*, 331 U.S. 532, 542 (1947).  As such, the "substantive crime[s]" at issue here and the "conspiracy to commit . . . crime[s]" at issue in *MH Pillars* "are not the 'same offence' for double jeopardy purposes."  *Felix*, 503 U.S. at 389.

Patel's arguments to the contrary are unavailing.  First, his attempt to revive the "same conduct" test is a nonstarter.  According to Patel, "[t]he Government's allegations implicate the Double Jeopardy Clause given that criminal activity underlying the alleged money laundering *in this case*, was already prosecuted and punished through the MH Pillars Plea Agreement and Consent Final Order of Forfeiture."  Mot. to Dismiss Indictment at 11, Dkt. 68.  He insists that the $4,620,459.45 he forfeited in *MH Pillars* represents the "closed universe" of unlawful proceeds the government could pursue and that this prosecution oversteps that limitation.  *Id.*  But Patel's position flies in the face of a basic precept of double-jeopardy law: it is immaterial whether a subsequent criminal prosecution is based on the same or closely related conduct as a prior criminal prosecution.  *See Gamble v. United States*, 587 U.S. 678, 710 (2019) (noting the "long-settled rule that an 'offence' for double jeopardy purposes is defined by statutory elements, not by what might be described in a looser sense as a unit of criminal conduct").  Indeed, "[t]he 'same-conduct' rule . . . is wholly inconsistent with . . . Supreme Court precedent and with the clear common-law understanding of double jeopardy."  *Dixon*, 509 U.S. at 704.  Patel provides no authority to the

contrary. At most, he cites Justice Souter's concurrence in *Dixon*, *see* Reply Br. at 12, Dkt. 76, but this opinion is not binding and is based on disagreements with *Blockburger*, which is binding.

Even under a "same conduct" rule, Patel would not be placed twice in jeopardy. Indeed, he now faces charges related to alleged conduct occurring *after* his sentencing in *MH Pillars*. The prior prosecution related to Payza's illicit operations "[f]rom in or before 2011" through 2018, Indictment at 7, *MH Pillars*, No. 18-cr-53, Dkt. 1, while this case focuses on Patel's alleged illicit transfer of Payza proceeds "[o]n or about April 27, 2021," Indictment at 1–2. Evidence may overlap between the two cases, but the government has targeted two entirely different sets of conduct.

Second, contrary to Patel's assertions, the *MH Pillars* forfeiture money judgment is irrelevant for double-jeopardy purposes. The forfeiture money judgment was a condition of Patel's *MH Pillars* plea agreement that required forfeiture of $4,620,459.45 seized by the government. According to Patel, the judgment "represent[ed] the full value of the unlawful proceeds subject to forfeiture" and barred any subsequent prosecutions related to any other unlawful Payza proceeds. Mot. to Dismiss Indictment at 11. This argument is meritless. The forfeiture money judgment was "an element of the sentence imposed *following* conviction," not an element of Patel's earlier convictions. *United States v. Libretti*, 516 U.S. 29, 38–39 (1995). As such, the forfeiture money judgment has no relevance for *Blockburger* purposes. Patel points to no authority to the contrary, and his arguments sound in plea-agreement breach, not double jeopardy. And for the reasons stated in Part III, *infra*, Patel's arguments fail even if the Court were to construe them in support of an argument that the government breached the terms of his plea agreement by bringing this case.

### III.     BREACH OF PLEA AGREEMENT

Patel's alternative argument in support of his motion to dismiss—that the government breached his plea agreement by charging him in this case—is also without merit.  The thrust of Patel's position is that "the forfeiture money judgment entered against him" in *MH Pillars*— totaling $4,620,459.45—"was intended to encapsulate the entirety of the forfeitable proceeds being sought by the Government."  Reply Br. at 2.  According to Patel, the government thereby promised to forego any future forfeiture or criminal actions against him in relation to illicit Payza proceeds beyond the $4,620,459.45.  The Court is unpersuaded.

"[P]lea bargains are essentially contracts," *Puckett v. United States*, 556 U.S. 129, 137 (2009), and the Court thus "adhere[s] to the principles of contract law in the interpretation of plea agreements," *United States v. Jackson*, 26 F.4th 994, 1000 (D.C. Cir. 2022).  "In evaluating whether a plea agreement has been breached," the Court "look[s] to the reasonable understanding of the parties and construe[s] any ambiguities in the agreement against the government," *United States v. Henry*, 758 F.3d 427, 431 (D.C. Cir. 2014).  When the government is found to have breached a plea agreement, a court may order "specific performance of the agreement or withdrawal of the guilty plea."  *Id.*  "In the context of plea agreements, the defendant maintains the burden of proving that the agreement has been breached."  *United States v. Yong Ho Ahn*, 231 F.3d 26, 36 (D.C. Cir. 2000).

Under the plea agreement, Patel had no reasonable expectation that the government would not pursue (either through forfeiture or criminal prosecution) unlawful Payza proceeds in excess of the forfeited $4,620,459.45.  Start with "the plain text of the agreement."  *Barnes v. FBI*, 35 F.4th 828, 832 n.2 (D.C. Cir. 2022).  It makes clear that the government could pursue forfeiture or criminal charges related to any unlawful proceeds.  *See* Plea Agreement at 2, 11, 13.  As to

forfeiture, Patel "agree[d] . . . the government [could] seek to forfeit *any* of [his] assets, real or personal, that [were] subject to forfeiture under any federal statute, whether or not this agreement specifically identifies the asset." *Id.* at 11 (emphasis added). Patel also "agree[d] to forfeiture of *all interest in . . . any property*, real or personal, involved in the offense to which [he] is pleading guilty, and any property traceable thereto." *Id.* (emphasis added). These provisions left the government free to seek "forfeiture" of any assets "involved in" Payza's illicit operations. *Id.*

Further, under the agreement, the government also reserved the right to prosecute Patel for future criminal offenses. Although the government agreed to refrain from "further prosecut[ion] . . . for the conduct set forth in the attached Statement of Offense," the agreement guaranteed the government's "right to prosecute" Patel for obstruction of justice or "any crimes not included within this Agreement or committed by [Patel] *after* the execution of this Agreement." *Id.* at 2, 13 (emphasis added). That language certainly contemplates prosecution for the alleged conduct here: Patel's alleged laundering of Payza funds that were subject to forfeiture in the *MH Pillars* case. Indeed, such alleged conduct—in contravention of his obligation "to identify all assets over which [he] exercises or exercised control"—exposed Patel "to criminal prosecution for any other crimes" under the explicit terms of the plea agreement. *Id.* at 12. As such, the Court rejects the suggestion that the plea agreement created a reasonable expectation that Patel would be immune from future forfeiture or criminal actions related to later-discovered illicit Payza proceeds.

Patel's arguments to the contrary do not persuade. First, Patel places undue weight on the $4,620,459.45 forfeiture money judgment. He contends the government "agreed to cap [his] forfeiture obligations at $4,620[,]459.45" and forego seizures or forfeitures "in excess" of that amount. Mot. to Dismiss Indictment at 13–14. He arrives at this conclusion by pointing to the forfeiture money judgment, which on his reading, "provide[s] greater specificity with regard to

*which* assets were indeed forfeitable pursuant to" the government's ability to seek "any property" under the plea agreement. Reply Br. at 4. Invoking the interpretive principle "the specific governs the general," Patel urges the Court to read the forfeiture money judgment as narrowing "the scope of [his] forfeiture obligations" as described in the plea agreement. *Id.* at 5.

But this is not a plausible reading of Patel's plea agreement and the forfeiture money judgment. True, the plea agreement specifies that Patel "agrees to the entry of a forfeiture money judgment for a sum of money equal to" $4,620,459.45, but this provision is a specific exercise of the government's broader authority to seek forfeiture of "*any* property . . . involved in the offense." Plea Agreement at 11 (emphasis added). As the plea agreement explicitly notes, the government is empowered to seek forfeiture of "any of [Patel's] assets" "whether or not th[e] [plea] agreement specifically identifies the asset[s]." *Id.* Accordingly, the government did not run afoul of the plea agreement by pursuing the 450 Bitcoin at issue here—*i.e.*, forfeitable assets *besides* the $4,620,459.45 "specifically identifie[d]" in the plea agreement. *Id.* Patel quotes at length from the forfeiture money judgment, *see* Reply at 4–6, but these excerpts in no way narrow the government's broad discretion to seek forfeiture of "any property" involved in Patel's *MH Pillars* offense conduct. And it is of no moment that the forfeiture money judgment "makes no mention of additional, yet to be seized, proceeds" because then-unidentified proceeds were plainly beyond the scope of that specific forfeiture order. *Id.* at 10. Indeed, the government now seeks a new forfeiture order.

Second, prosecutors' statements during the *MH Pillars* proceedings cannot undo the plain meaning of the plea agreement. Patel posits that at sentencing the government represented that "the value of the seized assets would be credited toward the forfeiture money judgment," and the government "never mentioned the possibility that . . . Patel would still be liable and required to

forfeit additional assets later identified as proceeds of Payza's unlawful operations." *Id.* at 9.  From these representations and alleged omissions, Patel infers the government promised to cap his forfeiture obligations at $4,620,459.45.

This misses the mark.  As a preliminary matter, the text of the plea agreement trumps any oral representations outside the agreement's four corners.  As the D.C. Circuit has held, an "integration clause" is "strong evidence that no implied promises exist[]" because "integration clauses establish that the written plea bargain was adopted by the parties as a complete and exclusive statement of the terms of the agreement." *Yong Ho Ahn*, 231 F.3d at 36.  The *MH Pillars* plea agreement contains such a clause, providing that "[n]o agreements, promises, understandings, or representations have been made by the parties or their counsel other than those contained in writing herein, nor will any such agreements, promises, understandings, or representations be made unless committed to writing."  Plea Agreement at 13.  Even if the government had orally represented that Patel's forfeiture exposure was capped, there is no evidence before the Court that such representations were reduced to writing or otherwise compliant with the integration clause.

Further, Patel has not provided any nonconclusory evidence that the government promised to cap his forfeiture obligations at $4,620,459.45.  Of course, "the government must be held to the promises it made." *Yong Ho Ahn*, 231 F.3d at 37 (quoting *United States v. Fentress*, 792 F.2d 461, 464–65 (4th Cir. 1986)).  But the government "will not be bound to those [promises] it did not make," *id.*, and none of the statements Patel invokes suggest a promise to cap his forfeiture obligations.  Rather, the quoted statements merely suggest that, at the time of sentencing, Patel consented to "the specific forfeiture of the assets listed in the consent order of forfeiture."  Tr. of Sentencing at 31:19–21, *MH Pillars*, No. 18-cr-53, Dkt. 140.  The plea agreement makes clear,

however, that forfeiture of such specifically identified assets does not detract from the government's broader power to seek forfeiture of other assets tied to Payza.

* * *

As noted, Patel has indicated an interest in seeking an interlocutory appeal of the Court's rulings on his motions to dismiss. The Court acknowledges his right to do so, at least as to the double-jeopardy motion. *See Abney v. United States*, 431 U.S. 651, 662 (1977); *United States v. Ginyard*, 511 F.3d 203, 208 (D.C. Cir. 2008). Nonetheless, it urges Patel to file any such notice promptly, and in no event later than 14 days from the date of this order. *See* Fed. R. App. P. 4(b)(1)(A)(i). The Court views Patel's motions as entirely devoid of merit. Extraterritoriality is not a jurisdictional issue, and the Double Jeopardy Clause does not protect a defendant from prosecution for alleged criminal conduct occurring *after* a conviction for different conduct.

Accordingly, it is

**ORDERED** that the defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction, Dkt. 69, is **DENIED**. It is further

**ORDERED** that the Motion to Dismiss Indictment for Double Jeopardy Violation or, in the Alternative, as Specific Performance for Breach of Plea Agreement, Dkt. 68 is **DENIED**. It is further

**ORDERED** that on or before April 26, 2024, the defendant shall notify the Court and the government whether it intends to file an interlocutory appeal, and on or before April 29, 2024, the government shall notify the Court of its position on the defendant's right to seek an interlocutory appeal of this memorandum opinion and order.

DABNEY L. FRIEDRICH
United States District Judge

April 24, 2024

14